| STATE OF TENNESSEE 20TH JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER _10-1197-II_ |
|---|---|---|

| PLAINTIFF TENNESSEE FOOTBALL, INC. | DEFENDANT LANE MONTE KIFFIN, INDIVIDUALLY AND IN HIS CAPACITY AS AGENT FOR UNIVERSITY OF SOUTHERN CALIFORNIA; AND UNIVERSITY OF SOUTHERN CALIFORNIA |
|---|---|

TO: (NAME AND ADDRESS OF DEFENDANT)

Method of Service:
Private Process Server

Lane Monte Kiffin,
in his Capacity as Agent for University of Southern California
3501 Watt Way, HER 203B
Los Angeles, CA 90089

**RECEIVED**

JUL 27 2010

Office of the General Counsel

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| Attorney for plaintiff: (Name, address & telephone number) Robert E. Boston Mark W. Peters Mary Beth Thomas Waller Lansden Dortch & Davis, LLP 511 Union St. Ste. 2700 Nashville, TN 37219 (615) 244-6380 | FILED, ISSUED & ATTESTED  JUL 26 2010  CRISTI SCOTT, Clerk and Master By: 1 Public Square Suite 308 Nashville, TN 37201  Deputy Clerk & Master |
|---|---|

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

***Submit one original plus one copy for each defendant to be served.

ADA Coordinator, Cristi Scott (862-5710)

3833376.1

**Exhibit 1**

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| TENNESSEE FOOTBALL, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. _10-1197-II_ |
| LANE MONTE KIFFIN, INDIVIDUALLY AND IN HIS CAPACITY AS AGENT FOR UNIVERSITY OF SOUTHERN CALIFORNIA; AND UNIVERSITY OF SOUTHERN CALIFORNIA, | ) ) ) ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Tennessee Football, Inc. ("Tennessee Football") makes the following Complaint against Defendants, Lane Monte Kiffin ("Kiffin"), in his individual capacity and as agent for the University of Southern California ("USC"), and USC:

### PARTIES

1.    Plaintiff Tennessee Football is a Delaware Corporation with its principal place of business in Nashville, Tennessee. Tennessee Football owns and operates the National Football League team known as the Tennessee Titans.

2.    Defendant USC is a California not-for-profit corporation with its principal place of business in Los Angeles County, California. Among other activities, USC operates an intercollegiate sports program, the teams within which include a college football team commonly referred to as the USC Trojans.

3832892.3

3.     Defendant Kiffin is an employee and authorized agent for the USC Trojans football program, and is assigned as its head football coach.  At all relevant times, Kiffin was USC's agent with actual and apparent authority to staff, manage and operate the USC Trojans football program, including the selection of its coaches.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this tort cause of action and Defendants pursuant to Tenn. Code Ann. § 16-11-102 (a).

5.     This Court has personal jurisdiction over Defendants because Defendants caused injury to Tennessee Football through their intentional and tortious acts and omissions which were committed in and caused injury in the State of Tennessee.

6.     This Court has general personal jurisdiction over Kiffin because he has engaged in systematic and continuous activity within Tennessee, to wit: Kiffin resided in Tennessee from December 2008 to January 2010, and upon information and belief, continues to own real property located at 8701 Inlet Drive, Knoxville, Tennessee 37922; he previously worked as head football coach at the University of Tennessee, Knoxville from December 2008 to January 2010, and while in that role engaged in the recruitment of high school student athletes from various parts of the United States to attend the University of Tennessee; since leaving the University of Tennessee for the head coaching job at USC, Kiffin has contacted at least five football coaches who were residents of and employed in Tennessee — Monte Kiffin,

Ed Orgeron, Willie Mack Garza, James Cregg, and Kennedy Pola – to solicit their respective employment at USC; and has otherwise engaged in business and commerce within Tennessee, thereby purposefully availing himself of the general jurisdiction of the State of Tennessee.

7.    This Court has general personal jurisdiction over USC, and Kiffin as its agent, because they have engaged in systematic and continuous activities in Tennessee, upon information and belief, to wit: USC has previously been registered with the Secretary of State of Tennessee to do business within the state; USC and Kiffin have engaged in recruiting student athletes residing in Tennessee to enroll at USC and participate in its sports programs by offering scholarships and other incentives; USC and Kiffin have recently negotiated employment contracts with football coaches residing in Tennessee, including Monte Kiffin, Ed Orgeron, James Cregg, Willie Mack Garza, and Kennedy Pola; and upon information and belief, USC solicits contributions from its alumni located within the state of Tennessee, as a result of all of which USC and Kiffin as its agent have purposefully availed themselves of the general jurisdiction of the State of Tennessee.

8.    Venue is proper in this Court pursuant to Tenn. Code Ann. §§ 20-4-101(a) and 20-4-106 because Tennessee Football's causes of action arose and accrued in Davidson County, Tennessee.

## FACTS

9.    Tennessee Football entered into an enforceable written contract of employment with Kennedy Pola. Under it, Pola agreed to become exclusively an

employee of Tennessee Football as its running backs position coach beginning February 1, 2010 and ending not before February 14, 2011 (the "Pola Contract"). A redacted copy of the Pola Contract is attached hereto as <u>Exhibit A</u>.

10. Pola agreed in paragraph 4(a) of the Pola Contract that he would not "directly or indirectly, serve as an employee or do work for anyone else or any other firm or organization without the express prior written consent of the President <u>and</u> General Counsel [of Tennessee Football]." Pola Contract, ¶ 4(a) (emphasis in original).

11. Pola agreed in paragraph 11(c) of the Pola Contract that he would not "under any circumstance solicit discussions or entertain employment with any other person or entity during the Term unless...given written permission to do so by [Tennessee Football] or by the Commissioner in accordance with NFL Rules," and that "[v]erbal consent is inadequate." Pola Contract, ¶ 11(c).

12. Pola was not given express written consent by Tennessee Football or the Commissioner of the NFL to entertain employment with any other entity.

13. Tennessee Football performed all of its obligations under the Pola Contract.

14. Kiffin and USC through him were aware of the Pola Contract.

15. On Friday, July 22, 2010, while the Pola Contract was still in full force, Kiffin, individually and in his capacity as agent of USC, in furtherance of a culture of violation and avoidance of respect for the sanctity of contract, which Kiffin similarly practices, unbeknownst to Tennessee Football, contacted Pola in

Nashville, Tennessee and solicited his employment as the USC Trojans' offensive coordinator and running backs coach, and thus interfered with and induced the breach of the Pola Contract to the damage of Tennessee Football.

16. Kiffin and USC's actions involving Tennessee Football were intentional, without legal justification, and were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with existing contracts and induce the breach thereof, including the Pola Contract: For instance, in December 2008, Kiffin accepted the contractual position of head football coach at the University of Tennessee. Without warning, in January 2010, Kiffin abruptly departed after one season, leaving the University of Tennessee without an experienced head football coach, to accept the head coach position he currently holds at USC. Shortly thereafter, Kiffin and USC persuaded four more University of Tennessee coaches – Monte Kiffin, Ed Orgeron, James Cregg and Willie Mack Garza – to leave the University of Tennessee to assume employment in coaching positions with USC. Upon information and belief, USC and Kiffin also attempted to hire for USC a running backs coach, Eric Bienemy, who was under contract at the time with the National Football League team known as the Minnesota Vikings. USC and Kiffin were unsuccessful in persuading Bienemy to end his relationship with Minnesota, but upon information and belief, Minnesota was forced to renegotiate Bienemy's salary to its detriment due to Kiffin and USC's acts of interference.

17.     On or around Saturday, July 24, 2010, Pola was solicited and induced by Defendants to accept the position of offensive coordinator and running backs coach at USC, an action in breach of the Pola Contract.

18.     Pola's breach of contract, induced by Kiffin and USC, has damaged Tennessee Football, by, *inter alia*, depriving it of an experienced running backs coach less than one week prior to the beginning of Tennessee Football's training camp, disrupting its season planning and coordinated effort among its coaches, causing potential loss of confidence by its players, and causing extensive monetary losses consisting of salary and benefits paid to Pola since the commencement of the Pola Contract, and future damage.

## COUNT I – INDUCEMENT OF BREACH OF CONTRACT PURSUANT TO TENN. CODE ANN. § 47-50-109

19.     The Pola Contract is a legally enforceable contract between Kennedy Pola and Tennessee Football, and Tennessee Football has fully performed under the Pola Contract.

20.     Pola breached the Pola Contract by discussing employment opportunities with USC and Kiffin, accepting employment with USC offered through Kiffin, and leaving the Tennessee Football running backs coach position prior to the expiration of the Pola Contract.

21.     USC and Kiffin were aware of the Pola Contract.

22.     USC and Kiffin maliciously intended to – and did – induce Pola to breach the Pola Contract.  USC and Kiffin engaged in improper means in their procurement of the breach and were not legally justified in their actions.  Kiffin and

USC's actions, through him, were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with an existing contract and induce the breach thereof.

23. USC and Kiffin's actions violate Tenn. Code Ann. § 47-50-109, which provides that

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

24. As a proximate result of USC and Kiffin's tortious conduct, Tennessee Football has been damaged in an amount to be proven at trial.

## COUNT II – COMMON LAW TORTIOUS INTERFERENCE WITH CONTRACT

25. The Pola Contract is a legally enforceable contract between Kennedy Pola and Tennessee Football, and Tennessee Football has fully performed under the Pola Contract.

26. Pola breached the Pola Contract by discussing employment opportunities with USC and Kiffin, accepting employment with USC offered through Kiffin, and leaving the Tennessee Football running backs coach position prior to the expiration of the Pola Contract.

27.   USC and Kiffin were aware of the Pola Contract.

28.   USC and Kiffin maliciously intended to – and did – induce Pola to breach the Pola Contract.  USC and Kiffin engaged in improper means in their procurement of the breach and were not legally justified in their actions.  Kiffin and USC's actions, through him, were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with an existing contract and induce the breach thereof.

29.   As a proximate result of USC and Kiffin's tortious conduct, Tennessee Football has been damaged in an amount to be proven at trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Tennessee Football, Inc. prays for:

(a)   Judgment against USC and Kiffin in an amount to be proven at trial;

(b)   The judgment to be for treble damages pursuant to Tenn. Code Ann. § 47-50-109;

(c)   Punitive damages in an amount to be proven at trial;

(d)   A jury to try all claims so triable;

(e)   An award of attorneys' fees and costs to the extent allowable by law; and

(f)   Such further and general relief as this Court deems appropriate.

ROBERT E. BOSTON (#9744)

MARK W. PETERS  (#18422)
MARY BETH THOMAS  (#23003)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone:   (615) 244-6380
Facsimile:   (615) 244-6804
bob.boston@wallerlaw.com
mark.peters@wallerlaw.com
marybeth.thomas@wallerlaw.com

*Attorneys for Tennessee Football, Inc.*

3832892.3

9

## EMPLOYMENT AGREEMENT

This is an Agreement between KENNEDY POLA and TENNESSEE FOOTBALL, INC., a Delaware corporation, which does business as Tennessee Titans.

### DEFINITIONS:

In this Agreement, the following capitalized terms will have the meaning shown below:

"Agreement" means this employment agreement and its appendices, all as amended or supplemented in a writing which You and Titans both sign.

"Applicable Law" means the internal laws of the State of Tennessee without resort or regard to choice of law rules, including, without limitation, statutory and common law of Tennessee; any applicable local or municipal ordinances, rules, regulations and codes; any applicable federal law or regulation of the United States of America; and where the context clearly indicates, the law of any other jurisdiction.

"Baptist Sports Park" means the Titans' Training Facility and related improvements located at or about 460 Great Circle Road in Nashville, Tennessee.

"Benefits" means the Benefits of Your employment which are in addition to salary, but which end if Your employment is Terminated, and includes such things as vacation and insurance. Your current Benefits are shown in Appendix "1."

"Board of Directors" means the Board of Directors of Titans.

"Cause" means grounds or reasons to Terminate this Agreement and can include any of the events mentioned in Numbered Paragraphs 6 and 8 of this Agreement.

"Chief Operating Officer" means the incumbent Chief Operating Officer of Titans and his designates or successors.

"Commissioner" means the incumbent Commissioner of the NFL or any successor, whether acting, interim or permanent.

"Executive Vice President" means an incumbent Executive Vice President of Titans and any successor.

"Facilities" means all of the physical plant comprising Baptist Sports Park and LP Field, including the fencing, fields, buildings, outbuildings, parking lots, superstructures, conveyances, seating areas, offices, lighting, private suites and lounges, storage areas, offices, concession areas, restrooms, meeting rooms and all other components, without limitation, of the premises at 460 Great Circle Road and One Titans Way in Nashville, Tennessee, and, for the purposes of this Agreement, their respective employees, agents, contractors and subcontractors.

"General Counsel" means the incumbent General Counsel of Titans and any successor.

"General Manager" means the incumbent General Manager of Titans or any other designated manager of the football operations of Titans and any successor.

"Gratuity" means a gift of money, property or any other thing that has a value of $100.00 or greater which is offered to You by any Titan employee, co-worker, player, Titan vendor, or person who does or desires to do business with Titans or an affiliate of Titans.

"Head Coach" means the incumbent Head Coach of Titans and any successor Head Coach, interim or permanent.

"Internet" means the world-wide network of computers commonly understood to provide some or all of the following features, among others: electronic mail, file transfers through File Transfer Protocol, Telnet access to local and remote computers, UseNet Newsgroups, Gopher access to information on local and remote computers, Wide Area Information Servers, and World Wide Web access.

"Job Duties" means the Work Titans has hired You to do and the services You are expected to provide to Titans, subject to the provisions in this Agreement for reassignment or any Special Provisions.

"Job Title" means the title inserted in the applicable spaces below and is Your job title.

# EXHIBIT A

"LP Field" means the assumed name of Cumberland Stadium, Inc. and the stadium and related facilities located on the east bank of the Cumberland River between Woodland Street and Shelby Street in Nashville, Tennessee, whose physical address is One Titans Way in Nashville, Tennessee, including any subsequent names of LP Field.

"Marks" means the trademarks, trade names, uniform design and trade dress of Titans, whether or not registered, including, without limitation, the name mark "Tennessee Titans," the monogram fireball, the stylized Titans' Sword, Music City Miracle, Titans' current and former uniform designs, helmet logos, and the names and trademarks of Houston Oilers, L.L.C., including, without limitation, the name mark "Houston Oilers," the derrick logo, former uniform designs, helmet logos and "Luv Ya Blue!"

"Media" means any communication medium of every present and future kind or character and regardless of how and when transmitted, received, stored or retrieved, including, without limitation, all forms of radio (including AM, FM and satellite radio transmissions and any future radio or radio delivery system), television (including analogue, digital, UHF, VHF, cable, satellite and any future television or television delivery or receiving system), print, computer, Internet, telephone, public address, photography and motion pictures of every type and description, and whether one or more of the foregoing, alone, in tandem or in combination.

"NFL" means the National Football League, an unincorporated association with its principal place of business in New York, or any successor football league of which Titans may be a member.

"NFL Rules" means, without limitation, the Constitution and By-Laws of the NFL; the rules, regulations and policies of the NFL; and pronouncements, rulings, arbitration decisions and directives of the Commissioner of the NFL, as the same exist now or as later modified, supplemented or amended.

"President" means the incumbent President of Titans or his designate or successor

"Property" means any data or information collected or stored in any form, whether visual or aural, presented on paper, stored electronically, digitally or in analogue form, whether video, still photo or otherwise, which is provided to You or which comes into Your possession by way of Titans or any of its employees, agents or contractors, including, without limitation, scouting, combine or player data; play books; game plans; game or practice films; or any other information or data You develop or prepare or which is developed or prepared under Your supervision during the Term, or is furnished or made available to You by Titans, and which Property is or can be stored or available on paper, computer hard drive or disc, CD Rom, digitally or in any other format, platform or means by which data or information can or may be stored or retrieved or viewed now or in the future. Property also means and includes any other Property furnished or provided to You by Titans during the Term of this Agreement, such as but not limited to office supplies, films, videos, video equipment, cellular telephones, mobile communication devices, equipment, card keys, keys and the vehicle, if any, issued to You.

"Salary" means the annual or other periodic salary or wages You will be paid during the years or period of the Term, written in the applicable spaces and paid to You as described herein, and is separate from Benefits.

"Special Provisions" means the other and additional terms, if any, written in the spaces under that heading in Appendix "3" to this Agreement

"Term" means the time period of Your employment under the provisions of this Agreement.

"Termination" or "Terminated" or "Terminate(s)" means and/or includes the Termination of this Agreement in accordance with its provisions prior to or at the conclusion of the Term.

"Titans" means Tennessee Football, Inc., a Delaware corporation doing business as Tennessee Titans, a member club of the NFL, and its successor franchise holder(s) and assigns.

"Titan Policies" means the written employment policies, rules and regulations of Titans which apply to You, including, without limitation, the policies You are given to read and/or sign at or near the time You sign this Agreement and all written amendments and additions made by Titans during the Term of this Agreement.

"Work" means the things You agree to do in this Agreement, the tasks You are assigned by Your supervisors, written materials You are to produce, instructions You give players or other employees, and the time You spend on behalf of Titans

"You," "Your" and "Yours" means the person employed in this Agreement by Titans and whose name is shown in the Preamble hereof.

2

**AGREEMENTS:**

**TERM:** February 1, 2010, to and until the later of: (i) February 14, 2011, and (ii) the close of business on the first business day after seven (7) days following the date of the last playoff game in which Titans is a participating team immediately following the last regular-season game of the last regular season covered by this Agreement.

**SALARY:** $      (2/1/10 to and until the later date described in the "Term" above)      REDACTED

**JOB TITLE:** Assistant Coach-Running Backs (subject to reassignment in accordance with the terms hereof)

**JOB DUTIES:**

(1) Scouting, recruiting, training, coaching, counseling, conditioning and otherwise developing player personnel in collaboration with the Head Coach and Offensive Coordinator.

(2) Designing and conducting portions of player practices and running player meetings related to players You supervise; and developing, installing and implementing the offensive game plan in collaboration with the Head Coach and Offensive Coordinator.

(3) Evaluating, testing and grading players (both present and prospective team members) for purposes of determining player retention, advancement and recruitment, as well as on-field assignments and playing time.

(4) Developing players and improving on-field performance through the application of corrective and disciplinary action; and enforcing rules of conduct/decorum and other team policies applicable to player personnel, on and off the playing field, in collaboration with the Head Coach and General Management.

(5) Otherwise supervising and directing Titans' running backs.

(6) Such other usual services and duties customarily performed by an Assistant Coach as may be required of You from time to time by Titans

(7) Such Media appearances as Titans may require of You.

(8) You will abide by and enforce all NFL Rules as they are presently established or as revised in the future, including without limitation, Personal Conduct Policy, Alcohol Policy, Policy and Program for Substance Abuse, and Policy on Anabolic Steroids and Related Substances, these being mentioned by way of example only.

## 1. EMPLOYMENT AND SALARY

(a) During the Term, You agree to perform the Job Duties and Work faithfully, timely and to the best of Your ability, and to honor and perform all of Your other obligations and agreements contained in this Agreement. Titans agrees that it will pay You the Salary in the manner hereafter provided.

(b) Your faithful performance of the Job Duties includes all of Your working time, energy and talents exclusively for Titans under the direction of the President, as implemented by the President and/or Head Coach.

(c) Your annual Salary will typically be paid in equal semi-monthly installments on the 1st and 15th days of each month during the Term but in any event will equal during the Term the amount of annual Salary shown herein. Deductions from Salary will be made: (i) pursuant to Applicable Law; (ii) for any unreimbursed advances made by Titans to You or for Your account and which are not repaid after 30 days; (iii) as You have agreed separately with Titans; and (iv) for any Benefits You are allowed or request under Titan Policies and for which payment is Your responsibility under Titan Policies

(d) You agree that You will faithfully follow the Work Instructions You are given by Titans, its President, Head Coach or any other supervisory personnel under whom You work.

(e) You agree that You will act in good faith toward Titans and will be truthful with Titans' management and that You will not misrepresent anything to Titans or to anyone who supervises You.

3

2. **PROMOTION OF TITANS**

In addition to your Job Duties, You expressly agree that You will fully cooperate with and assist Titans in all reasonable promotional activities. You consent to and authorize Titans to use Your name, portrait, picture, image, likeness and voice, and Your game, practice and scrimmage performance in all Media, whether for trade, promotional, advertising or other reasonable purposes of Titans

3. **CONFIDENTIALITY**

(a) You acknowledge and agree that the Work You perform in furtherance of Your Job Duties, this Agreement, the terms of Your employment, and Your discussions with supervisory personnel of Titans are confidential and You promise and agree not to disclose anything about Your Work to any third party during the Term or thereafter.

(b) You agree that You will not make any public criticism or cause to be made any public criticism of Titans or any employee of Titans to Media or any third party during the Term or thereafter.

(c) Separately, and not in limitation of any of Your other agreements regarding confidentiality, You will not discuss with any player, player agent or representative, Media, or any other person anything regarding the terms, length, compensation, salary, business or any other feature of any player contract. Any such discussion shall take place only with Titans' player contract negotiators and no one else. **YOU WILL NOT UNDER ANY CIRCUMSTANCE MAKE PUBLIC OR PRIVATE COMMENTARY (INCLUDING "OFF-THE-RECORD" STATEMENTS) TO ANYONE ABOUT THE STATUS OF TITANS' NEGOTIATIONS WITH ANY PLAYER OR OFFER ANY STATEMENT REGARDING THE ADVISABILITY OR DESIRABILITY OF SIGNING OR NOT SIGNING ANY PLAYER.**

(d) The terms of this Agreement and any amendment are confidential, and You agree not to disclose the terms of Your employment, Salary or Benefits or the provisions of this Agreement to any third party other than Your retained professional advisors (such as Your lawyer, accountant and tax professional) who have agreed to keep the terms, conditions and provisions of this Agreement confidential. This Agreement will be fully disclosed to and approved by the Commissioner.

4. **OTHER EMPLOYMENT**

(a) You agree that during the Term, You will not, either directly or indirectly, serve as an employee or do work for anyone else or any other firm or organization without the express prior written consent of the President <u>and</u> General Counsel You also agree to comply with NFL Rules regarding ownership of any interest in any football organization

(b) You agree that during the Term, Titans has the exclusive right to direct, control and prohibit Your appearance on or in Media, whether commercial, informational or otherwise, and whether or not for a fee All public or Media appearances by You, without exception, are to be made only with Titans' express written permission or at Titans' instructions. You agree not to make or enter into any written or oral appearances for public or Media appearances of any sort unless approved in writing in advance by Titans. Among other things, this means You may not appear on any television or radio program unless and until specifically approved by Titans.

(c) You will ordinarily be granted written permission to attend and participate in and to retain income from coaching instructional clinics and seminars and other promotional appearances, provided that:

(1) You request and obtain written permission from the President and General Counsel prior to making any such agreement; and
(2) The agreement You want to make does not, in Titans' sole opinion, materially interfere with Your Work or Job Duties; and
(3) No Media appearance is involved; and
(4) The agreement or appearance does not violate this Agreement or NFL Rules or Applicable Law; and
(5) Neither You nor Your third-party employer use or imply the sponsorship, endorsement, approval or involvement of Titans in any other work You are permitted to do

(d) You acknowledge that Titans, through NFL Properties, Inc., is participating in one or more game-day commercial licensing programs. Therefore, You agree that You will not accept any consideration from third parties for and will not wear, display or promote any apparel or other product bearing commercial names or logos of manufacturers throughout the game-day period while You are in view of the stadium and television audience, including any pre-game warmups, in the bench area, and during post-game interviews in the locker room or on the field. However, You understand that pursuant to such NFL Properties licensing programs, You

4

are expected to wear merchandise on game day on the sidelines as provided by official NFL suppliers and as directed by NFL Properties, and You agree to do so

5.  **TERMINATION AND TERMINATION FOR CAUSE**

(a)  If, during the Term, You become incapacitated or disabled to the extent You are unable to perform Your Work or Job Duties, Titans may, at its sole option, Terminate this Agreement for Cause by providing You with 30 days' notice at the last address You have given Titans. Unless You are able to resume Your Work and Job Duties prior to the date of Termination provided in such notice, this Agreement shall then Terminate. Certain Benefits related to disability may be, but are not necessarily, applicable in the event of Termination for such disability In the event Titans elects not to provide notice of Termination as a result of a disabling injury or illness, Titans may substitute its then-applicable salary continuation plan benefit, if any, in lieu of Your Salary during the period of any such disability. Nothing, however, shall prevent Titans from exercising at any time its right to provide notice of Termination for Cause in the event of a disability, regardless of salary continuation.

(b)  In the event of Your death during the Term, this Agreement shall automatically Terminate for Cause and Titans shall pay Your survivor Your accrued Salary through the date of Your death, less any sums received by You or Your beneficiaries under the workers compensation provisions of Applicable Law.

(c)  You expressly agree that during the Term, You will conduct Yourself at all times with due regard for and adhere strictly to NFL Rules, Applicable Law and Titan Policies. Moreover, You agree that during the Term, You will at all times conduct Yourself: (i) with due regard for public convention and morals; (ii) in a manner that reflects positively upon Titans and the NFL; and (iii) in accordance with NFL Rules. You acknowledge that public acceptance of the Titans, the NFL and Titans' management depends largely in part on perception of Titans' employees and their conduct at all times Additionally, You acknowledge that Your conformity to Applicable Law, NFL Rules, Titan Policies and this Agreement and Your adherence to the terms, conditions and provisions of this Agreement are of great importance to Titans and the NFL. Accordingly, You agree that Titans may, at its sole option, Terminate this Agreement for Cause in the event You:

    (1)  Commit a high-level misdemeanor or any felony under Applicable Law of any jurisdiction.
    (2)  Violate material NFL Rules (including, without limitation, those set out in Numbered Paragraph 6 below) or Titan Policies.
    (3)  Use, sell or distribute any illegal or controlled substance.
    (4)  Engage in unabated insubordination.
    (5)  Violate any provision of this Agreement, including, without limitation, refusal to perform Job Duties or Work.
    (6)  Engage in any other act or conduct which, in the reasonable opinion of Titans, constitutes a material violation of Your covenants to Titans with regard to Your conduct during the Term.
    (7)  Use any Property for any purpose other than to benefit Titans.
    (8)  Voluntarily retire; nevertheless, You agree that in the event You voluntarily retire during the Term, You will not return to work in any capacity in the NFL or in professional or amateur athletics during the remainder of the Term, except with Titans' express prior written consent. Moreover, this Agreement and Titans' obligation to pay Salary shall be tolled during the period of any such voluntary retirement, even in the event Titans hires a replacement for Your position. All Benefits, however, end as of the date of Your voluntary retirement. Titans retains all of its common law rights and remedies in any event.

(d)  Titans may Terminate this Agreement for any Cause by giving You five (5) days' written notice at the last address You have provided Titans. When such notice is given, this Agreement is Terminated and is of no further force or effect, but Titans shall pay Your accrued Salary as of the date of Termination. All Benefits will end as of the date of Termination (without regard to Cause or lack thereof), except as provided or required by Applicable Law for COBRA benefits or other statutory benefits, the possibility of disability benefits (if applicable), or benefits continued by NFL Rules.

(e)  In the event this Agreement is Terminated by Titans for a reason other than Cause, Titans shall continue to pay Your Salary for the remainder of the Term, subject to Your affirmative obligation to mitigate. All Benefits shall end as of the date of Termination (without regard to Cause or lack thereof), subject to Applicable Law relating to Benefits and the then-effective provisions of Titan Policies.

(f)  In the event this Agreement is not Terminated for Cause and Titans is obligated to continue payment of Your Salary, You have the continuing affirmative duty during the Term to seek other employment diligently. At all times during payment of such Salary by Titans to You, Titans shall have the continuing right to obtain and verify data from You regarding your efforts to mitigate and your remuneration from any employment or work, including, without limitation, taking Your statement under oath. After Termination, but during the Term, all amounts

5

earned or which reasonably could have been earned by You during the Term shall be offset against Titans' Salary obligation to You.

6   **NFL RULES**

    (a) You agree at all times to comply with and to be bound by all of the provisions of the Constitution and By-Laws and Rules and Regulations of the NFL and of any other league of which Titans may hereafter become a member, all of which are hereby made a part of this Agreement, and by the decisions of the Commissioner of the NFL, which shall be final, conclusive and unappealable. You and Titans agree that all matters in dispute between You and Titans shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive, binding and unappealable by You and Titans. You, if involved or affected in any manner whatsoever by a decision of the Commissioner, whether the decision results from a dispute between You and Titans or otherwise, hereby release and discharge the Commissioner, the NFL or any league of which Titans may hereafter become a member, each director, officer, stockholder, owner or partner of any club in the NFL, or in any league of which Titans may hereafter become a member, each employee, agent, official or representative of the NFL or of any club in the NFL, or of any league of which Titans may hereafter become a member, jointly or severally, individually and in their official capacities, of and from any and all claims, demands, damages, suits, actions and causes of action whatsoever, in law or in equity, arising out of or in connection with any such decision of the Commissioner

    (b) You understand that the Constitution and By-Laws of the NFL, among other things, expressly provide that You have an obligation to communicate openly and candidly with the principal owner and/or his designated representatives; to ensure that Titans' ownership is informed on a complete and timely basis of all matters affecting Titans' operations; to respect the authority and responsibility of ownership to make decisions on behalf of Titans; and to avoid actions that undermine or damage Titans' reputation or operating success.

    (c) You hereby acknowledge that You have read the Constitution and By-Laws and Rules and Regulations of the NFL and of Titans, and that You understand their meaning.

    (d) You expressly agree that Titans reserves the right to discipline You for violation of NFL Rules or Titan Policies, which discipline may include any or all of the following:

        (1) Termination for Cause.
        (2) Suspension without pay.
        (3) Suspension with pay.
        (4) Forfeiture of game tickets and/or credentials and/or parking passes.
        (5) Your good-faith participation in NFL or Titan educational, learning, rehabilitation or other corrective programs or treatment at Your personal expense (to the extent coverage is not available under benefits provided under Titan Policies).
        (6) Your good-faith participation in such activities as community or school service, relief efforts, local charitable endeavors or other reasonable community services.
        (7) Your good-faith compliance with any court order, probation order or lawful directive to pay fees, fines, court costs or other court-related fees.
        (8) Any other form of discipline or corrective action which Titans, acting reasonably and in good faith, may deem appropriate under the circumstances.

    Discipline imposed by Titans is separate from and in addition to any punishment or discipline which may be imposed by the Commissioner or by any governmental authority. Titans will make reasonable efforts to maintain the confidentiality of any discipline imposed pursuant to this Agreement.

7.   **REASSIGNMENT**

You agree that Titans has the right during the Term to reassign You to other or additional job classifications within Titans' organization, but not to reduce Your Salary as a result of any such reassignment. If You are reassigned to other or additional Work or Job Duties, You agree to perform such different Work or Job Duties to the best of Your ability.

8.   **TITAN PROPERTY**

    (a) You agree that all Property belongs exclusively to Titans and that You will return all Property to Titans in a timely fashion and at the request of Titans and at the Termination of this Agreement. You also agree to return all Property in the condition in which it was delivered to You or produced by You (reasonable wear and tear

excepted) and You expressly agree not to damage or harm Property intentionally or to misuse it or to transport or store it carelessly.

(b) You acknowledge that Property is developed or obtained by Titans at significant expense and that a part of Your Work and Job Duties is to protect it and insure that it is not mishandled, lost or damaged. Property You develop during the Term is to be used exclusively by and for the sole benefit of Titans. Property that is scouting or combine data or information is to be used only for Titans' sole and exclusive benefit and You promise that You will never provide any Property to any third party for any reason and that You will never participate in any effort to duplicate, reproduce or transmit any Property to or for the benefit of any third party.

(c) You expressly acknowledge that Your failure to comply with this Agreement with respect to Property can result in Termination of Your employment for Cause, and that additionally, You may be libel for civil damages resulting from Your misuse of Property or Your violation of provisions of this Agreement relating to Property. Moreover, Your use of Property to benefit Yourself personally or financially or to benefit any third party in any way may also result in NFL fines or discipline and/or criminal prosecution.

9. **TITAN MARKS, FACILITIES AND CREDENTIALS**

(a) You acknowledge and understand that as an employee of Titans, You acquire no rights of any kind to use or make use of Titans' name or Marks and You agree that You will not make any use of the name or Marks unless such use is for the exclusive benefit of Titans. You expressly agree that You will make no use of the name or Marks for any personal endeavor or enterprise at any time and You promise that You will not allow or permit others to use or make use of Titans' name or Marks except in connection with agreements made for the exclusive benefit of Titans and/or the NFL.

(b) You acknowledge and understand that as an employee of Titans, You acquire no right of any kind to use or make use of the Facilities or any part thereof except for the sole and exclusive use and benefit of Titans. You expressly agree that You will make no use of the Facilities for any personal endeavor or enterprise at any time and You promise that You will not allow or permit others to use or make use of the Facilities for any purpose other than Titans' business.

(c) You acknowledge and understand that admission credentials, official passes or any other means of entry into the Facilities or any portion thereof are the sole and exclusive property of Titans and/or the NFL. You are never authorized to sell, trade, offer or give away any admission credential, official pass or any other means of entry into the Facilities or any portion thereof except for the business or promotion of Titans. You agree that You will never sell, trade or give away any admission credential, official pass or any other means of entry into the Facilities or any portion thereof except for the business or promotion of Titans in accordance with Titan Policies.

(d) Your personal use of the Marks, Facilities, credentials, official passes or any other means of entry into the Facilities is a violation of Your covenants and agreements with Titans and a breach of this Agreement and renders You subject to Termination for Cause by Titans, suspension without pay, and/or discipline by the Commissioner.

(e) Under current Titan Policies, You will be provided complimentary admission tickets to Titan home games for the use of Your family, friends or guests. You may also be permitted to purchase additional admission tickets, if available. You expressly agree, however, that You will not use any Titan tickets for resale at a price in excess of the posted price whether for Your own account or for the use of a third party or ticket broker. Moreover, You expressly agree that You will not trade or barter any Titan ticket for vehicles, merchandise or services with any third party under any circumstances. Should You violate this provision of this Agreement, Titans may impose appropriate discipline. Resale of Your tickets for a price in excess of the face value thereof is also a violation of NFL Rules and subject to separate discipline by the Commissioner.

10 **ETHICAL CONSIDERATIONS**

(a) You must disclose to Your immediate supervisor and an Executive Vice President in writing or by e-mail any Gratuity offered to You by any Titan employee, co-worker, player or third party prior to acceptance. Individual meals; recognition such as plaques, trophies or similar items; gifts or tokens of inexpensive clothing, travel bags or modest customary holiday gifts; pen and pencil sets; and other typical gifts of little or small value less than $100.00 are not included in the scope of this Agreement. Once disclosed, You may accept the gift IF AND ONLY IF approved in writing in advance by both Your supervisor and an Executive Vice President. Approval will ordinarily be granted in the absence of any actual or potential conflict of interest.

7

(b) You may not solicit, accept or agree to accept from any third party any Gratuity or an offer of employment in connection with or in return for any decision approval, disapproval, recommendation, purchase or purchase order, or influencing or attempting to influence the outcome of a decision made in connection with or related to the business of Titans or an affiliate of Titans.

(c) You may not perform work or provide services to or for the benefit of another Titan employee, co-worker, player or third party as part of an agreement for hire, for barter, for money, or for any other thing of value without the express prior written consent of Titans, acting through its COO or his delegate. You may not perform work for other Titan employees, co-workers, players, or any third party during Work hours or otherwise and may not make use of Titan equipment for such purposes. Any approved third-party work arrangement must be disclosed to Your supervisor and an Executive Vice President and noted in Your personnel file. Routine errands, travel arrangements, and other ordinary personal tasks commonly performed for a supervisor are acceptable, but not as part of a regular or separate agreed-upon arrangement for compensation.

11. **MISCELLANEOUS**

(a) This Agreement and any other signed agreements which are attached represent the entire Agreement. There are no oral understandings. Neither You nor Titans will rely on any other representations, agreements or discussions, including prior negotiations. If not written in this Agreement or its attachments or Titan Policies, it is not part of this Agreement.

(b) Paragraph headings are for convenience and organization and do not alter or affect any of the language of the Agreement.

(c) You agree that You will not under any circumstance solicit discussions or entertain employment with any other person or entity during the Term unless You are given written permission to do so by Titans or by the Commissioner in accordance with NFL Rules. Verbal consent is inadequate.

(d) This Agreement shall be governed by and interpreted pursuant to Applicable Law of Tennessee without resort or regard to choice of law rules.

(e) This Agreement may be executed in multiple counterparts, each of which will be considered an original.

(f) If Titans wants or needs to provide You notice, it may do so by sending it properly addressed by Certified Mail, return receipt requested, or courier delivery to You at:

KENNEDY POLA
c/o Tennessee Football, Inc.
460 Great Circle Road
Nashville, TN 37228

and such notice shall be deemed provided as of the date deposited with the courier service or United States Postal Service and properly addressed and postage or delivery charges paid.

If You want or need to provide notice to Titans, You may do so by sending it properly addressed by Certified Mail, return receipt requested, or courier delivery to Titans at:

Tennessee Football, Inc.
460 Great Circle Road
Nashville, TN 37228
Attn: Steve Underwood

and such notice shall be deemed provided as of the date deposited with the courier service or United States Postal Service and properly addressed and postage or delivery charges paid.

You or Titans may provide notice to the other of a different future address or addresses, so long as such notice is given in the manner described in this Agreement.

(g) This Agreement will be binding upon and inure to the benefit of Titans' successor franchise holders, successors and assigns. Assignment by You of Your Job Duties is prohibited unless separately agreed in writing.

(h) This Agreement supersedes all prior agreements between You and Titans, except to the extent such prior agreements have continuing obligations (such as confidentiality and choice of law) on Your part.

8

12. **COMMISSIONER APPROVAL**

   This Agreement is not effective or binding upon Titans until approved by the Commissioner.

EXECUTED on the date shown below, but effective as of the commencement date of the Term.

TENNESSEE FOOTBALL, INC.

By _____
   Steve Underwood, Senior Executive Vice President,
   Chief Operating Officer & General Counsel
   Date: _____ 02/11/10 _____

_____
KENNEDY POLA
Date: _____ 2/10/10 _____

APPROVED:

_____
Commissioner, National Football League
Date: _____ 6/16/10 _____

U:\WORK\Titans\Football\Coaches\Contracts\pola 2010_agt.wpd

APPENDIX "1"

<u>BENEFITS</u>

# REDACTED

APPENDIX "2"

## TITAN POLICIES AND NFL RULES

List of Titan Policies and NFL Rules provided to You during prior employment and/or at the time You sign this Agreement (as each of the following are presently established or as revised in the future):

_____     1   EEO Policy

_____     2.   Automobile Policy

_____     3.   Insurance Plan Booklet

_____     4.   Employee Policy Manual

_____     5.   Drug-Free Workplace Policy

_____     6.   Selected Portions of NFL Constitution and By-Laws

_____     7.   Tampering Policy

_____     8.   Salary Continuation/Disability Insurance Plan

_____     9.   Personal Conduct Policy

_____     10.  Alcohol Policy

_____     11.  Policy and Program for Substance Abuse

_____     12.  Policy on Anabolic Steroids and Related Substances

KENNEDY POLA

APPENDIX "3"

<u>SPECIAL PROVISIONS</u>

1. The Salary shown for the period February 1, 2010, to February 14, 2011, will be reduced by gross salary payments You have already received, if any, from Titans during the period from February 1, 2010, until the date this Agreement is signed by You.

2. Titans currently has a preferred bank and requests that You consider Pinnacle Bank for your banking needs, including mortgage or other lending. Should Pinnacle Bank not be the preferred bank of Titans in the future, Titans requests that You similarly consider any successor preferred bank.

3. You understand and acknowledge that during the Term, Titans currently offers to You a free taxi and/or car service for transportation 365 days a year, 24 hours a day, in the events You have been drinking and need transportation to Your home or elsewhere. Your arrest for driving while intoxicated or driving under the influence of drugs or alcohol is a violation of NFL Rules and Titan Policies and can be Cause for Termination and/or discipline under this Agreement.

KENNEDY POLA

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>*10-1197-TL* |
|---|---|---|
| **PLAINTIFF**<br>TENNESSEE FOOTBALL, INC. | **DEFENDANT**<br>LANE MONTE KIFFIN, INDIVIDUALLY AND IN HIS<br>CAPACITY AS AGENT FOR UNIVERSITY OF SOUTHERN<br>CALIFORNIA; AND<br>UNIVERSITY OF SOUTHERN CALIFORNIA | |

TO: (NAME AND ADDRESS OF DEFENDANT)

Method of Service:
Private Process Server

Lane Monte Kiffin, Individually
3501 Watt Way, HER 203B
Los Angeles, CA 90089

**RECEIVED**

JUL 27 2010

Office of the General Counsel

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff:<br>(Name, address & telephone number)<br>Robert E. Boston<br>Mark W. Peters<br>Mary Beth Thomas<br>Waller Lansden Dortch & Davis, LLP<br>511 Union St. Ste. 2700<br>Nashville, TN 37219<br>(615) 244-6380 | **FILED, ISSUED & ATTESTED**   JUL 26 2010<br><br>**CRISTI SCOTT, Clerk and Master**<br>By:      1 Public Square<br>        Suite 308<br>        Nashville, TN 37201<br><br>**Deputy Clerk & Master** |
|---|---|

**NOTICE OF DISPOSITION DATE**

    The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

    If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | |
| | **Sheriff** |

***Submit one original plus one copy for each defendant to be served.**

⚥ADA Coordinator, Cristi Scott (862-5710)

3833459.1

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| TENNESSEE FOOTBALL, INC., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Case No. _10-1197-II_ |
| v. ) | |
| ) | JURY DEMAND |
| LANE MONTE KIFFIN, ) | |
| INDIVIDUALLY AND IN HIS ) | |
| CAPACITY AS AGENT FOR ) | |
| UNIVERSITY OF SOUTHERN ) | |
| CALIFORNIA; AND UNIVERSITY OF ) | |
| SOUTHERN CALIFORNIA, ) | |
| ) | |
|     Defendants. ) | |

---

## COMPLAINT

---

Plaintiff Tennessee Football, Inc. ("Tennessee Football") makes the following Complaint against Defendants, Lane Monte Kiffin ("Kiffin"), in his individual capacity and as agent for the University of Southern California ("USC"), and USC:

### PARTIES

1.    Plaintiff Tennessee Football is a Delaware Corporation with its principal place of business in Nashville, Tennessee. Tennessee Football owns and operates the National Football League team known as the Tennessee Titans.

2.    Defendant USC is a California not-for-profit corporation with its principal place of business in Los Angeles County, California. Among other activities, USC operates an intercollegiate sports program, the teams within which include a college football team commonly referred to as the USC Trojans.

3832892.3

3.     Defendant Kiffin is an employee and authorized agent for the USC Trojans football program, and is assigned as its head football coach. At all relevant times, Kiffin was USC's agent with actual and apparent authority to staff, manage and operate the USC Trojans football program, including the selection of its coaches.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this tort cause of action and Defendants pursuant to Tenn. Code Ann. § 16-11-102 (a).

5.     This Court has personal jurisdiction over Defendants because Defendants caused injury to Tennessee Football through their intentional and tortious acts and omissions which were committed in and caused injury in the State of Tennessee.

6.     This Court has general personal jurisdiction over Kiffin because he has engaged in systematic and continuous activity within Tennessee, to wit: Kiffin resided in Tennessee from December 2008 to January 2010, and upon information and belief, continues to own real property located at 8701 Inlet Drive, Knoxville, Tennessee 37922; he previously worked as head football coach at the University of Tennessee, Knoxville from December 2008 to January 2010, and while in that role engaged in the recruitment of high school student athletes from various parts of the United States to attend the University of Tennessee; since leaving the University of Tennessee for the head coaching job at USC, Kiffin has contacted at least five football coaches who were residents of and employed in Tennessee – Monte Kiffin,

Ed Orgeron, Willie Mack Garza, James Cregg, and Kennedy Pola – to solicit their respective employment at USC; and has otherwise engaged in business and commerce within Tennessee, thereby purposefully availing himself of the general jurisdiction of the State of Tennessee.

7.　This Court has general personal jurisdiction over USC, and Kiffin as its agent, because they have engaged in systematic and continuous activities in Tennessee, upon information and belief, to wit: USC has previously been registered with the Secretary of State of Tennessee to do business within the state; USC and Kiffin have engaged in recruiting student athletes residing in Tennessee to enroll at USC and participate in its sports programs by offering scholarships and other incentives; USC and Kiffin have recently negotiated employment contracts with football coaches residing in Tennessee, including Monte Kiffin, Ed Orgeron, James Cregg, Willie Mack Garza, and Kennedy Pola; and upon information and belief, USC solicits contributions from its alumni located within the state of Tennessee, as a result of all of which USC and Kiffin as its agent have purposefully availed themselves of the general jurisdiction of the State of Tennessee.

8.　Venue is proper in this Court pursuant to Tenn. Code Ann. §§ 20-4-101(a) and 20-4-106 because Tennessee Football's causes of action arose and accrued in Davidson County, Tennessee.

## FACTS

9.　Tennessee Football entered into an enforceable written contract of employment with Kennedy Pola. Under it, Pola agreed to become exclusively an

Case 3:10-cv-00727    Document 1-1    Filed 07/30/10    Page 26 of 66 PageID #: 30

employee of Tennessee Football as its running backs position coach beginning February 1, 2010 and ending not before February 14, 2011 (the "Pola Contract"). A redacted copy of the Pola Contract is attached hereto as Exhibit A.

10.  Pola agreed in paragraph .4(a) of the Pola Contract that he would not "directly or indirectly, serve as an employee or do work for anyone else or any other firm or organization without the express prior written consent of the President and General Counsel [of Tennessee Football]." Pola Contract, ¶ 4(a) (emphasis in original).

11.  Pola agreed in paragraph 11(c) of the Pola Contract that he would not "under any circumstance solicit discussions or entertain employment with any other person or entity during the Term unless...given written permission to do so by [Tennessee Football] or by the Commissioner in accordance with NFL Rules," and that "[v]erbal consent is inadequate." Pola Contract, ¶ 11(c).

12.  Pola was not given express written consent by Tennessee Football or the Commissioner of the NFL to entertain employment with any other entity.

13.  Tennessee Football performed all of its obligations under the Pola Contract.

14.  Kiffin and USC through him were aware of the Pola Contract.

15.  On Friday, July 22, 2010, while the Pola Contract was still in full force, Kiffin, individually and in his capacity as agent of USC, in furtherance of a culture of violation and avoidance of respect for the sanctity of contract, which Kiffin similarly practices, unbeknownst to Tennessee Football, contacted Pola in

Nashville, Tennessee and solicited his employment as the USC Trojans' offensive coordinator and running backs coach, and thus interfered with and induced the breach of the Pola Contract to the damage of Tennessee Football.

16. Kiffin and USC's actions involving Tennessee Football were intentional, without legal justification, and were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with existing contracts and induce the breach thereof, including the Pola Contract: For instance, in December 2008, Kiffin accepted the contractual position of head football coach at the University of Tennessee. Without warning, in January 2010, Kiffin abruptly departed after one season, leaving the University of Tennessee without an experienced head football coach, to accept the head coach position he currently holds at USC. Shortly thereafter, Kiffin and USC persuaded four more University of Tennessee coaches – Monte Kiffin, Ed Orgeron, James Cregg and Willie Mack Garza – to leave the University of Tennessee to assume employment in coaching positions with USC. Upon information and belief, USC and Kiffin also attempted to hire for USC a running backs coach, Eric Bienemy, who was under contract at the time with the National Football League team known as the Minnesota Vikings. USC and Kiffin were unsuccessful in persuading Bienemy to end his relationship with Minnesota, but upon information and belief, Minnesota was forced to renegotiate Bienemy's salary to its detriment due to Kiffin and USC's acts of interference.

17. On or around Saturday, July 24, 2010, Pola was solicited and induced by Defendants to accept the position of offensive coordinator and running backs coach at USC, an action in breach of the Pola Contract.

18. Pola's breach of contract, induced by Kiffin and USC, has damaged Tennessee Football, by, *inter alia*, depriving it of an experienced running backs coach less than one week prior to the beginning of Tennessee Football's training camp, disrupting its season planning and coordinated effort among its coaches, causing potential loss of confidence by its players, and causing extensive monetary losses consisting of salary and benefits paid to Pola since the commencement of the Pola Contract, and future damage.

## COUNT I – INDUCEMENT OF BREACH OF CONTRACT PURSUANT TO TENN. CODE ANN. § 47-50-109

19. The Pola Contract is a legally enforceable contract between Kennedy Pola and Tennessee Football, and Tennessee Football has fully performed under the Pola Contract.

20. Pola breached the Pola Contract by discussing employment opportunities with USC and Kiffin, accepting employment with USC offered through Kiffin, and leaving the Tennessee Football running backs coach position prior to the expiration of the Pola Contract.

21. USC and Kiffin were aware of the Pola Contract.

22. USC and Kiffin maliciously intended to – and did – induce Pola to breach the Pola Contract. USC and Kiffin engaged in improper means in their procurement of the breach and were not legally justified in their actions. Kiffin and

USC's actions, through him, were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with an existing contract and induce the breach thereof.

23. USC and Kiffin's actions violate Tenn. Code Ann. § 47-50-109, which provides that

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

24. As a proximate result of USC and Kiffin's tortious conduct, Tennessee Football has been damaged in an amount to be proven at trial.

## COUNT II – COMMON LAW TORTIOUS INTERFERENCE WITH CONTRACT

25. The Pola Contract is a legally enforceable contract between Kennedy Pola and Tennessee Football, and Tennessee Football has fully performed under the Pola Contract.

26. Pola breached the Pola Contract by discussing employment opportunities with USC and Kiffin, accepting employment with USC offered through Kiffin, and leaving the Tennessee Football running backs coach position prior to the expiration of the Pola Contract.

27. USC and Kiffin were aware of the Pola Contract.

28. USC and Kiffin maliciously intended to – and did – induce Pola to breach the Pola Contract. USC and Kiffin engaged in improper means in their procurement of the breach and were not legally justified in their actions. Kiffin and USC's actions, through him, were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with an existing contract and induce the breach thereof.

29. As a proximate result of USC and Kiffin's tortious conduct, Tennessee Football has been damaged in an amount to be proven at trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Tennessee Football, Inc. prays for:

    (a)    Judgment against USC and Kiffin in an amount to be proven at trial;

    (b)    The judgment to be for treble damages pursuant to Tenn. Code Ann. § 47-50-109;

    (c)    Punitive damages in an amount to be proven at trial;

    (d)    A jury to try all claims so triable;

    (e)    An award of attorneys' fees and costs to the extent allowable by law; and

    (f)    Such further and general relief as this Court deems appropriate.

ROBERT E. BOSTON (#9744)

MARK W. PETERS (#18422)
MARY BETH THOMAS (#23003)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
bob.boston@wallerlaw.com
mark.peters@wallerlaw.com
marybeth.thomas@wallerlaw.com

*Attorneys for Tennessee Football, Inc.*

## EMPLOYMENT AGREEMENT

This is an Agreement between KENNEDY POLA and TENNESSEE FOOTBALL, INC., a Delaware corporation, which does business as Tennessee Titans.

**DEFINITIONS:**

In this Agreement, the following capitalized terms will have the meaning shown below:

"Agreement" means this employment agreement and its appendices, all as amended or supplemented in a writing which You and Titans both sign.

"Applicable Law" means the internal laws of the State of Tennessee without resort or regard to choice of law rules, including, without limitation, statutory and common law of Tennessee; any applicable local or municipal ordinances, rules, regulations and codes; any applicable federal law or regulation of the United States of America; and where the context clearly indicates, the law of any other jurisdiction.

"Baptist Sports Park" means the Titans' Training Facility and related improvements located at or about 460 Great Circle Road in Nashville, Tennessee.

"Benefits" means the Benefits of Your employment which are in addition to salary, but which end if Your employment is Terminated, and includes such things as vacation and insurance. Your current Benefits are shown in Appendix "1."

"Board of Directors" means the Board of Directors of Titans.

"Cause" means grounds or reasons to Terminate this Agreement and can include any of the events mentioned in Numbered Paragraphs 5 and 8 of this Agreement.

"Chief Operating Officer" means the incumbent Chief Operating Officer of Titans and his designates or successors.

"Commissioner" means the incumbent Commissioner of the NFL or any successor, whether acting, interim or permanent.

"Executive Vice President" means an incumbent Executive Vice President of Titans and any successor.

"Facilities" means all of the physical plant comprising Baptist Sports Park and LP Field, including the fencing, fields, buildings, outbuildings, parking lots, superstructures, conveyances, seating areas, offices, lighting, private suites and lounges, storage areas, offices, concession areas, restrooms, meeting rooms and all other components, without limitation, of the premises at 460 Great Circle Road and One Titans Way in Nashville, Tennessee, and, for the purposes of this Agreement, their respective employees, agents, contractors and subcontractors.

"General Counsel" means the incumbent General Counsel of Titans and any successor.

"General Manager" means the incumbent General Manager of Titans or any other designated manager of the football operations of Titans and any successor.

"Gratuity" means a gift of money, property or any other thing that has a value of $100.00 or greater which is offered to You by any Titan employee, co-worker, player, Titan vendor, or person who does or desires to do business with Titans or an affiliate of Titans.

"Head Coach" means the incumbent Head Coach of Titans and any successor Head Coach, interim or permanent.

"Internet" means the world-wide network of computers commonly understood to provide some or all of the following features, among others: electronic mail, file transfers through File Transfer Protocol, Telnet access to local and remote computers, UseNet Newsgroups, Gopher access to information on local and remote computers, Wide Area Information Servers, and World Wide Web access.

"Job Duties" means the Work Titans has hired You to do and the services You are expected to provide to Titans, subject to the provisions in this Agreement for reassignment or any Special Provisions.

"Job Title" means the title inserted in the applicable spaces below and is Your job title.

## EXHIBIT A

"LP Field" means the assumed name of Cumberland Stadium, Inc. and the stadium and related facilities located on the east bank of the Cumberland River between Woodland Street and Shelby Street in Nashville, Tennessee, whose physical address is One Titans Way in Nashville, Tennessee, including any subsequent names of LP Field.

"Marks" means the trademarks, trade names, uniform design and trade dress of Titans, whether or not registered, including, without limitation, the name mark "Tennessee Titans," the monogram fireball, the stylized Titans' Sword, Music City Miracle, Titans' current and former uniform designs, helmet logos, and the names and trademarks of Houston Oilers, L.L.C., including, without limitation, the name mark "Houston Oilers," the derrick logo, former uniform designs, helmet logos and "Luv Ya Blue!"

"Media" means any communication medium of every present and future kind or character and regardless of how and when transmitted, received, stored or retrieved, including, without limitation, all forms of radio (including AM, FM and satellite radio transmissions and any future radio or radio delivery system), television (including analogue, digital, UHF, VHF, cable, satellite and any future television or television delivery or receiving system), print, computer, Internet, telephone, public address, photography and motion pictures of every type and description, and whether one or more of the foregoing, alone, in tandem or in combination.

"NFL" means the National Football League, an unincorporated association with its principal place of business in New York, or any successor football league of which Titans may be a member.

"NFL Rules" means, without limitation, the Constitution and By-Laws of the NFL; the rules, regulations and policies of the NFL; and pronouncements, rulings, arbitration decisions and directives of the Commissioner of the NFL, as the same exist now or as later modified, supplemented or amended.

"President" means the incumbent President of Titans or his designate or successor

"Property" means any data or information collected or stored in any form, whether visual or aural, presented on paper, stored electronically, digitally or in analogue form, whether video, still photo or otherwise, which is provided to You or which comes into Your possession by way of Titans or any of its employees, agents or contractors, including, without limitation, scouting, combine or player data; play books; game plans; game or practice films; or any other information or data You develop or prepare or which is developed or prepared under Your supervision during the Term, or is furnished or made available to You by Titans, and which Property is or can be stored or available on paper, computer hard drive or disc, CD Rom, digitally or in any other format, platform or means by which data or information can or may be stored or retrieved or viewed now or in the future. Property also means and includes any other Property furnished or provided to You by Titans during the Term of this Agreement, such as but not limited to office supplies, films, videos, video equipment, cellular telephones, mobile communication devices, equipment, card keys, keys and the vehicle, if any, issued to You.

"Salary" means the annual or other periodic salary or wages You will be paid during the years or period of the Term, written in the applicable spaces and paid to You as described herein, and is separate from Benefits.

"Special Provisions" means the other and additional terms, if any, written in the spaces under that heading in Appendix "3" to this Agreement

"Term" means the time period of Your employment under the provisions of this Agreement.

"Termination" or "Terminated" or "Terminate(s)" means and/or includes the Termination of this Agreement in accordance with its provisions prior to or at the conclusion of the Term.

"Titans" means Tennessee Football, Inc., a Delaware corporation doing business as Tennessee Titans, a member club of the NFL, and its successor franchise holder(s) and assigns.

"Titan Policies" means the written employment policies, rules and regulations of Titans which apply to You, including, without limitation, the policies You are given to read and/or sign at or near the time You sign this Agreement and all written amendments and additions made by Titans during the Term of this Agreement.

"Work" means the things You agree to do in this Agreement, the tasks You are assigned by Your supervisors, written materials You are to produce, instructions You give players or other employees, and the time You spend on behalf of Titans

"You," "Your" and "Yours" means the person employed in this Agreement by Titans and whose name is shown in the Preamble hereof

2

**AGREEMENTS:**

**TERM:** February 1, 2010, to and until the later of: (i) February 14, 2011, and (ii) the close of business on the first business day after seven (7) days following the date of the last playoff game in which Titans is a participating team immediately following the last regular-season game of the last regular season covered by this Agreement.

**SALARY:** $         (2/1/10 to and until the later date described in the "Term" above)     REDACTED

**JOB TITLE:** Assistant Coach-Running Backs (subject to reassignment in accordance with the terms hereof)

**JOB DUTIES:**

(1) Scouting, recruiting, training, coaching, counseling, conditioning and otherwise developing player personnel in collaboration with the Head Coach and Offensive Coordinator.

(2) Designing and conducting portions of player practices and running player meetings related to players You supervise; and developing, installing and implementing the offensive game plan in collaboration with the Head Coach and Offensive Coordinator.

(3) Evaluating, testing and grading players (both present and prospective team members) for purposes of determining player retention, advancement and recruitment, as well as on-field assignments and playing time.

(4) Developing players and improving on-field performance through the application of corrective and disciplinary action; and enforcing rules of conduct/decorum and other team policies applicable to player personnel, on and off the playing field, in collaboration with the Head Coach and General Management.

(5) Otherwise supervising and directing Titans' running backs.

(6) Such other usual services and duties customarily performed by an Assistant Coach as may be required of You from time to time by Titans

(7) Such Media appearances as Titans may require of You

(8) You will abide by and enforce all NFL Rules as they are presently established or as revised in the future, including without limitation, Personal Conduct Policy, Alcohol Policy, Policy and Program for Substance Abuse, and Policy on Anabolic Steroids and Related Substances, these being mentioned by way of example only.

1. **EMPLOYMENT AND SALARY**

(a) During the Term, You agree to perform the Job Duties and Work faithfully, timely and to the best of Your ability, and to honor and perform all of Your other obligations and agreements contained in this Agreement. Titans agrees that it will pay You the Salary in the manner hereafter provided.

(b) Your faithful performance of the Job Duties includes all of Your working time, energy and talents exclusively for Titans under the direction of the President, as implemented by the President and/or Head Coach.

(c) Your annual Salary will typically be paid in equal semi-monthly installments on the 1st and 15th days of each month during the Term but in any event will equal during the Term the amount of annual Salary shown herein. Deductions from Salary will be made: (i) pursuant to Applicable Law; (ii) for any unreimbursed advances made by Titans to You or for Your account and which are not repaid after 30 days; (iii) as You have agreed separately with Titans; and (iv) for any Benefits You are allowed or request under Titan Policies and for which payment is Your responsibility under Titan Policies

(d) You agree that You will faithfully follow the Work Instructions You are given by Titans, its President, Head Coach or any other supervisory personnel under whom You work.

(e) You agree that You will act in good faith toward Titans and will be truthful with Titans' management and that You will not misrepresent anything to Titans or to anyone who supervises You.

3

2  **PROMOTION OF TITANS**

In addition to your Job Duties, You expressly agree that You will fully cooperate with and assist Titans in all reasonable promotional activities. You consent to and authorize Titans to use Your name, portrait, picture, image, likeness and voice, and Your game, practice and scrimmage performance in all Media, whether for trade, promotional, advertising or other reasonable purposes of Titans

3.  **CONFIDENTIALITY**

(a)  You acknowledge and agree that the Work You perform in furtherance of Your Job Duties, this Agreement, the terms of Your employment, and Your discussions with supervisory personnel of Titans are confidential and You promise and agree not to disclose anything about Your Work to any third party during the Term or thereafter.

(b)  You agree that You will not make any public criticism or cause to be made any public criticism of Titans or any employee of Titans to Media or any third party during the Term or thereafter.

(c)  Separately, and not in limitation of any of Your other agreements regarding confidentiality, You will not discuss with any player, player agent or representative, Media, or any other person anything regarding the terms, length, compensation, salary, business or any other feature of any player contract. Any such discussion shall take place only with Titans' player contract negotiators and no one else. **YOU WILL NOT UNDER ANY CIRCUMSTANCE MAKE PUBLIC OR PRIVATE COMMENTARY (INCLUDING "OFF-THE-RECORD" STATEMENTS) TO ANYONE ABOUT THE STATUS OF TITANS' NEGOTIATIONS WITH ANY PLAYER OR OFFER ANY STATEMENT REGARDING THE ADVISABILITY OR DESIRABILITY OF SIGNING OR NOT SIGNING ANY PLAYER.**

(d)  The terms of this Agreement and any amendment are confidential, and You agree not to disclose the terms of Your employment, Salary or Benefits or the provisions of this Agreement to any third party other than Your retained professional advisors (such as Your lawyer, accountant and tax professional) who have agreed to keep the terms, conditions and provisions of this Agreement confidential. This Agreement will be fully disclosed to and approved by the Commissioner.

4.  **OTHER EMPLOYMENT**

(a)  You agree that during the Term, You will not, either directly or indirectly, serve as an employee or do work for anyone else or any other firm or organization without the express prior written consent of the President <u>and General Counsel</u> You also agree to comply with NFL Rules regarding ownership of any interest in any football organization.

(b)  You agree that during the Term, Titans has the exclusive right to direct, control and prohibit Your appearance on or in Media, whether commercial, informational or otherwise, and whether or not for a fee  All public or Media appearances by You, without exception, are to be made only with Titans' express written permission or at Titans' instructions. You agree not to make or enter into any written or oral agreement for public or Media appearances of any sort unless approved in writing in advance by Titans. Among other things, this means You may not appear on any television or radio program unless and until specifically approved by Titans.

(c)  You will ordinarily be granted written permission to attend and participate in and to retain income from coaching instructional clinics and seminars and other promotional appearances, provided that:

(1)  You request and obtain written permission from the President and General Counsel prior to making any such agreement; and
(2)  The agreement You want to make does not, in Titans' sole opinion, materially interfere with Your Work or Job Duties; and
(3)  No Media appearance is involved; and
(4)  The agreement or appearance does not violate this Agreement or NFL Rules or Applicable Law; and
(5)  Neither You nor Your third-party employer use or imply the sponsorship, endorsement, approval or involvement of Titans in any other work You are permitted to do.

(d)  You acknowledge that Titans, through NFL Properties, Inc., is participating in one or more game-day commercial licensing programs. Therefore, You agree that You will not accept any consideration from third parties for and will not wear, display or promote any apparel or other product bearing commercial names or logos of manufacturers throughout the game-day period while You are in view of the stadium and television audience, including any pre-game warmups, in the bench area, and during post-game interviews in the locker room or on the field. However, You understand that pursuant to such NFL Properties licensing programs, You

4

are expected to wear merchandise on game day on the sidelines as provided by official NFL suppliers and as directed by NFL Properties, and You agree to do so

5.  **TERMINATION AND TERMINATION FOR CAUSE**

   (a)  If, during the Term, You become incapacitated or disabled to the extent You are unable to perform Your Work or Job Duties, Titans may, at its sole option, Terminate this Agreement for Cause by providing You with 30 days' notice at the last address You have given Titans. Unless You are able to resume Your Work and Job Duties prior to the date of Termination provided in such notice, this Agreement shall then Terminate. Certain Benefits related to disability may be, but are not necessarily, applicable in the event of Termination for such disability In the event Titans elects not to provide notice of Termination as a result of a disabling injury or illness, Titans may substitute its then-applicable salary continuation plan benefit, if any, in lieu of Your Salary during the period of any such disability. Nothing, however, shall prevent Titans from exercising at any time its right to provide notice of Termination for Cause in the event of a disability, regardless of salary continuation.

   (b)  In the event of Your death during the Term, this Agreement shall automatically Terminate for Cause and Titans shall pay Your survivor Your accrued Salary through the date of Your death, less any sums received by You or Your beneficiaries under the workers compensation provisions of Applicable Law.

   (c)  You expressly agree that during the Term, You will conduct Yourself at all times with due regard for and adhere strictly to NFL Rules, Applicable Law and Titan Policies. Moreover, You agree that during the Term, You will at all times conduct Yourself: (i) with due regard for public convention and morals; (ii) in a manner that reflects positively upon Titans and the NFL; and (iii) in accordance with NFL Rules. You acknowledge that public acceptance of Titans, the NFL and Titans' management depends largely in part on perception of Titans' employees and their conduct at all times   Additionally, You acknowledge that Your conformity to Applicable Law, NFL Rules, Titan Policies and this Agreement and Your adherence to the terms, conditions and provisions of this Agreement are of great importance to Titans and the NFL. Accordingly, You agree that Titans may, at its sole option, Terminate this Agreement for Cause in the event You:

      (1)  Commit a high-level misdemeanor or any felony under Applicable Law of any jurisdiction.
      (2)  Violate material NFL Rules (including, without limitation, those set out in Numbered Paragraph 6 below) or Titan Policies.
      (3)  Use, sell or distribute any illegal or controlled substance.
      (4)  Engage in unabated insubordination.
      (5)  Violate any provision of this Agreement, including, without limitation, refusal to perform Job Duties or Work.
      (6)  Engage in any other act or conduct which, in the reasonable opinion of Titans, constitutes a material violation of Your covenants to Titans with regard to Your conduct during the Term.
      (7)  Use any Property for any purpose other than to benefit Titans.
      (8)  Voluntarily retire; nevertheless, You agree that in the event You voluntarily retire during the Term, You will not return to work in any capacity in the NFL or in professional or amateur athletics during the remainder of the Term, except with Titans' express prior written consent. Moreover, this Agreement and Titans' obligation to pay Salary shall be tolled during the period of any such voluntary retirement, even in the event Titans hires a replacement for Your position. All Benefits, however, end as of the date of Your voluntary retirement. Titans retains all of its common law rights and remedies in any event.

   (d)  Titans may Terminate this Agreement for any Cause by giving You five (5) days' written notice at the last address You have provided Titans. When such notice is given, this Agreement is Terminated and is of no further force or effect, but Titans shall pay Your accrued Salary as of the date of Termination. All Benefits will end as of the date of Termination (without regard to Cause or lack thereof), except as provided or required by Applicable Law for COBRA benefits or other statutory benefits, the possibility of disability benefits (if applicable), or benefits continued by NFL Rules.

   (e)  In the event this Agreement is Terminated by Titans for a reason other than Cause, Titans shall continue to pay Your Salary for the remainder of the Term, subject to Your affirmative obligation to mitigate. All Benefits shall end as of the date of Termination (without regard to Cause or lack thereof), subject to Applicable Law relating to Benefits and the then-effective provisions of Titan Policies.

   (f)  In the event this Agreement is not Terminated for Cause and Titans is obligated to continue payment of Your Salary, You have the continuing affirmative duty during the Term to seek other employment diligently. At all times during payment of such Salary by Titans to You, Titans shall have the continuing right to obtain and verify data from You regarding Your efforts to mitigate and your remuneration from any employment or work, including, without limitation, taking Your statement under oath. After Termination, but during the Term, all amounts

5

earned or which reasonably could have been earned by You during the Term shall be offset against Titans' Salary obligation to You.

## 6 NFL RULES

(a) You agree at all times to comply with and to be bound by all of the provisions of the Constitution and By-Laws and Rules and Regulations of the NFL and of any other league of which Titans may hereafter become a member, all of which are hereby made a part of this Agreement, and by the decisions of the Commissioner of the NFL, which shall be final, conclusive and unappealable. You and Titans agree that all matters in dispute between You and Titans shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive, binding and unappealable by You and Titans. You, if involved or affected in any manner whatsoever by a decision of the Commissioner, whether the decision results from a dispute between You and Titans or otherwise, hereby release and discharge the Commissioner, the NFL or any league of which Titans may hereafter become a member, each director, officer, stockholder, owner or partner of any club in the NFL, or in any league of which Titans may hereafter become a member, each employee, agent, official or representative of the NFL or of any club in the NFL, or of any league of which Titans may hereafter become a member, jointly or severally, individually and in their official capacities, of and from any and all claims, demands, damages, suits, actions and causes of action whatsoever, in law or in equity, arising out of or in connection with any such decision of the Commissioner

(b) You understand that the Constitution and By-Laws of the NFL, among other things, expressly provide that You have an obligation to communicate openly and candidly with the principal owner and/or his designated representatives; to ensure that Titans' ownership is informed on a complete and timely basis of all matters affecting Titans' operations; to respect the authority and responsibility of ownership to make decisions on behalf of Titans; and to avoid actions that undermine or damage Titans' reputation or operating success.

(c) You hereby acknowledge that You have read the Constitution and By-Laws and Rules and Regulations of the NFL and of Titans, and that You understand their meaning.

(d) You expressly agree that Titans reserves the right to discipline You for violation of NFL Rules or Titan Policies, which discipline may include any or all of the following:

(1) Termination for Cause.
(2) Suspension without pay.
(3) Suspension with pay.
(4) Forfeiture of game tickets and/or credentials and/or parking passes.
(5) Your good-faith participation in NFL or Titan educational, learning, rehabilitation or other corrective programs or treatment at Your personal expense (to the extent coverage is not available under benefits provided under Titan Policies).
(6) Your good-faith participation in such activities as community or school service, relief efforts, local charitable endeavors or other reasonable community services.
(7) Your good-faith compliance with any court order, probation order or lawful directive to pay fees, fines, court costs or other court-related fees.
(8) Any other form of discipline or corrective action which Titans, acting reasonably and in good faith, may deem appropriate under the circumstances.

Discipline imposed by Titans is separate from and in addition to any punishment or discipline which may be imposed by the Commissioner or by any governmental authority. Titans will make reasonable efforts to maintain the confidentiality of any discipline imposed pursuant to this Agreement.

## 7. REASSIGNMENT

You agree that Titans has the right during the Term to reassign You to other or additional job classifications within Titans' organization, but not to reduce Your Salary as a result of any such reassignment. If You are reassigned to other or additional Work or Job Duties, You agree to perform such different Work or Job Duties to the best of Your ability.

## 8. TITAN PROPERTY

(a) You agree that all Property belongs exclusively to Titans and that You will return all Property to Titans in a timely fashion and at the request of Titans and at the Termination of this Agreement. You also agree to return all Property in the condition in which it was delivered to You or produced by You (reasonable wear and tear

6

excepted) and You expressly agree not to damage or harm Property intentionally or to misuse it or to transport or store it carelessly.

(b) You acknowledge that Property is developed or obtained by Titans at significant expense and that a part of Your Work and Job Duties is to protect it and insure that it is not mishandled, lost or damaged. Property You develop during the Term is to be used exclusively by and for the sole benefit of Titans. Property that is scouting or combine data or information is to be used only for Titans' sole and exclusive benefit and You promise that You will never provide any Property to any third party for any reason and that You will never participate in any effort to duplicate, reproduce or transmit any Property to or for the benefit of any third party.

(c) You expressly acknowledge that Your failure to comply with this Agreement with respect to Property can result in Termination of Your employment for Cause, and that additionally, You may be libel for civil damages resulting from Your misuse of Property or Your violation of provisions of this Agreement relating to Property. Moreover, Your use of Property to benefit Yourself personally or financially or to benefit any third party in any way may also result in NFL fines or discipline and/or criminal prosecution.

9. **TITAN MARKS, FACILITIES AND CREDENTIALS**

(a) You acknowledge and understand that as an employee of Titans, You acquire no rights of any kind to use or make use of Titans' name or Marks and You agree that You will not make any use of the name or Marks unless such use is for the exclusive benefit of Titans. You expressly agree that You will make no use of the name or Marks for any personal endeavor or enterprise at any time and You promise that You will not allow or permit others to use or make use of Titans' name or Marks except in connection with agreements made for the exclusive benefit of Titans and/or the NFL.

(b) You acknowledge and understand that as an employee of Titans, You acquire no right of any kind to use or make use of the Facilities or any part thereof except for the sole and exclusive use and benefit of Titans. You expressly agree that You will make no use of the Facilities for any personal endeavor or enterprise at any time and You promise that You will not allow or permit others to use or make use of the Facilities for any purpose other than Titans' business

(c) You acknowledge and understand that admission credentials, official passes or any other means of entry into the Facilities or any portion thereof are the sole and exclusive property of Titans and/or the NFL. You are never authorized to sell, trade, offer or give away any admission credential, official pass or any other means of entry into the Facilities or any portion thereof except for the business or promotion of Titans. You agree that You will never sell, trade or give away any admission credential, official pass or any other means of entry into the Facilities or any portion thereof except for the business or promotion of Titans in accordance with Titan Policies.

(d) Your personal use of the Marks, Facilities, credentials, official passes or any other means of entry into the Facilities is a violation of Your covenants and agreements with Titans and a breach of this Agreement and renders You subject to Termination for Cause by Titans, suspension without pay, and/or discipline by the Commissioner.

(e) Under current Titan Policies, You will be provided complimentary admission tickets to Titan home games for the use of Your family, friends or guests. You may also be permitted to purchase additional admission tickets, if available. You expressly agree, however, that You will not use any Titan tickets for resale at a price in excess of the posted price whether for Your own account or for the use of a third party or ticket broker. Moreover, You expressly agree that You will not trade or barter any Titan ticket for vehicles, merchandise or services with any third party under any circumstances. Should You violate this provision of this Agreement, Titans may impose appropriate discipline  Resale of Your tickets for a price in excess of the face value thereof is also a violation of NFL Rules and subject to separate discipline by the Commissioner.

10 **ETHICAL CONSIDERATIONS**

(a) You must disclose to Your immediate supervisor and an Executive Vice President in writing or by e-mail any Gratuity offered to You by any Titan employee, co-worker, player or third party prior to acceptance. Individual meals; recognition such as plaques, trophies or similar items; gifts or tokens of inexpensive clothing, travel bags or modest customary holiday gifts; pen and pencil sets; and other typical gifts of little or small value less than $100.00 are not included in the scope of this Agreement. Once disclosed, You may accept the gift IF AND ONLY IF approved in writing in advance by both Your supervisor and an Executive Vice President. Approval will ordinarily be granted in the absence of any actual or potential conflict of interest.

Case 3:10-cv-00727    Document 1-1    Filed 07/30/10    Page 39 of 66 PageID #: 43

(b) You may not solicit, accept or agree to accept from any third party any Gratuity or an offer of employment in connection with or in return for any decision approval, disapproval, recommendation, purchase or purchase order, or influencing or attempting to influence the outcome of a decision made in connection with or related to the business of Titans or an affiliate of Titans.

(c) You may not perform work or provide services to or for the benefit of another Titan employee, co-worker, player or third party as part of an agreement for hire, for barter, for money, or for any other thing of value without the express prior written consent of Titans, acting through its COO or his delegate. You may not perform work for other Titan employees, co-workers, players, or any third party during Work hours or otherwise and may not make use of Titan equipment for such purposes. Any approved third-party work arrangement must be disclosed to Your supervisor and an Executive Vice President and noted in Your personnel file. Routine errands, travel arrangements, and other ordinary personal tasks commonly performed for a supervisor are acceptable, but not as part of a regular or separate agreed-upon arrangement for compensation.

11. **MISCELLANEOUS**

(a) This Agreement and any other signed agreements which are attached represent the entire Agreement. There are no oral understandings. Neither You nor Titans will rely on any other representations, agreements or discussions, including prior negotiations. If not written in this Agreement or its attachments or Titan Policies, it is not part of this Agreement.

(b) Paragraph headings are for convenience and organization and do not alter or affect any of the language of the Agreement.

(c) You agree that You will not under any circumstance solicit discussions or entertain employment with any other person or entity during the Term unless You are given written permission to do so by Titans or by the Commissioner in accordance with NFL Rules. Verbal consent is inadequate.

(d) This Agreement shall be governed by and interpreted pursuant to Applicable Law of Tennessee without resort or regard to choice of law rules.

(e) This Agreement may be executed in multiple counterparts, each of which will be considered an original.

(f) If Titans wants or needs to provide You notice, it may do so by sending it properly addressed by Certified Mail, return receipt requested, or courier delivery to You at:

KENNEDY POLA
c/o Tennessee Football, Inc.
460 Great Circle Road
Nashville, TN 37228

and such notice shall be deemed provided as of the date deposited with the courier service or United States Postal Service and properly addressed and postage or delivery charges paid.

If You want or need to provide notice to Titans, You may do so by sending it properly addressed by Certified Mail, return receipt requested, or courier delivery to Titans at:

Tennessee Football, Inc.
460 Great Circle Road
Nashville, TN 37228
Attn: Steve Underwood

and such notice shall be deemed provided as of the date deposited with the courier service or United States Postal Service and properly addressed and postage or delivery charges paid.

You or Titans may provide notice to the other of a different future address or addresses, so long as such notice is given in the manner described in this Agreement.

(g) This Agreement will be binding upon and inure to the benefit of Titans' successor franchise holders, successors and assigns. Assignment by You of Your Job Duties is prohibited unless separately agreed in writing.

(h) This Agreement supersedes all prior agreements between You and Titans, except to the extent such prior agreements have continuing obligations (such as confidentiality and choice of law) on Your part.

8

## 12. COMMISSIONER APPROVAL

This Agreement is not effective or binding upon Titans until approved by the Commissioner.

EXECUTED on the date shown below, but effective as of the commencement date of the Term.

TENNESSEE FOOTBALL, INC.

By _____
Steve Underwood, Senior Executive Vice President,
Chief Operating Officer & General Counsel
Date: _____ 02/11/10

_____
KENNEDY POLA
Date: _____ 2/10/10

APPROVED:

_____
Commissioner, National Football League
Date: _____ 6/16/10

U:\WORK\Titans\Football\Coaches\Contracts\pola 2010_agt.wpd

9

APPENDIX "1"

**BENEFITS**

# REDACTED

APPENDIX "2"

## TITAN POLICIES AND NFL RULES

List of Titan Policies and NFL Rules provided to You during prior employment and/or at the time You sign this Agreement (as each of the following are presently established or as revised in the future):

| | 1 | EEO Policy |
| | 2. | Automobile Policy |
| | 3. | Insurance Plan Booklet |
| | 4. | Employee Policy Manual |
| | 5. | Drug-Free Workplace Policy |
| | 6. | Selected Portions of NFL Constitution and By-Laws |
| | 7. | Tampering Policy |
| | 8. | Salary Continuation/Disability Insurance Plan |
| | 9. | Personal Conduct Policy |
| | 10. | Alcohol Policy |
| | 11. | Policy and Program for Substance Abuse |
| | 12. | Policy on Anabolic Steroids and Related Substances |

_____
KENNEDY POLA

APPENDIX "3"

SPECIAL PROVISIONS

1. The Salary shown for the period February 1, 2010, to February 14, 2011, will be reduced by gross salary payments You have already received, if any, from Titans during the period from February 1, 2010, until the date this Agreement is signed by You.

2. Titans currently has a preferred bank and requests that You consider Pinnacle Bank for your banking needs, including mortgage or other lending. Should Pinnacle Bank not be the preferred bank of Titans in the future, Titans requests that You similarly consider any successor preferred bank.

3. You understand and acknowledge that during the Term, Titans currently offers to You a free taxi and/or car service for transportation 365 days a year, 24 hours a day, in the events You have been drinking and need transportation to Your home or elsewhere. Your arrest for driving while intoxicated or driving under the influence of drugs or alcohol is a violation of NFL Rules and Titan Policies and can be Cause for Termination and/or discipline under this Agreement.

KENNEDY POLA

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>10-1197-IV |
|---|---|---|

| PLAINTIFF<br>TENNESSEE FOOTBALL, INC. | DEFENDANT<br>LANE MONTE KIFFIN, INDIVIDUALLY AND IN HIS<br>CAPACITY AS AGENT FOR UNIVERSITY OF SOUTHERN<br>CALIFORNIA; AND<br>UNIVERSITY OF SOUTHERN CALIFORNIA |
|---|---|

TO:   (NAME AND ADDRESS OF DEFENDANT)

Method of Service:
Private Process Server

UNIVERSITY OF SOUTHERN CALIFORNIA
C/O Carol Mauch Amir, Agent for Service of Process
3551 Trousdale Pky ADM 352
Los Angeles, CA 90089-5013

**RECEIVED**

JUL. 2 7 2010

Office of the General Counsel

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| Attorney for plaintiff:<br>(Name, address & telephone number)<br>Robert E. Boston<br>Mark W. Peters<br>Mary Beth Thomas<br>Waller Lansden Dortch & Davis, LLP<br>511 Union St. Ste. 2700<br>Nashville, TN 37219<br>(615) 244-6380 | FILED, ISSUED & ATTESTED<br><br>JUL 2 6 2010 |
|---|---|
| | CRISTI SCOTT, Clerk and Master<br>By:                                   1 Public Square<br>                                        Suite 308<br>                                        Nashville, TN 37201<br><br>Deputy Clerk & Master |

NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | |
| | **Sheriff** |

***Submit one original plus one copy for each defendant to be served.

ADA Coordinator, Cristi Scott (862-5710)

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| TENNESSEE FOOTBALL, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. _10·1197·II_ |
| LANE MONTE KIFFIN, INDIVIDUALLY AND IN HIS CAPACITY AS AGENT FOR UNIVERSITY OF SOUTHERN CALIFORNIA; AND UNIVERSITY OF SOUTHERN CALIFORNIA, | ) JURY DEMAND |
| Defendants. | ) |

## COMPLAINT

Plaintiff Tennessee Football, Inc. ("Tennessee Football") makes the following Complaint against Defendants, Lane Monte Kiffin ("Kiffin"), in his individual capacity and as agent for the University of Southern California ("USC"), and USC:

### PARTIES

1.     Plaintiff Tennessee Football is a Delaware Corporation with its principal place of business in Nashville, Tennessee. Tennessee Football owns and operates the National Football League team known as the Tennessee Titans.

2.     Defendant USC is a California not-for-profit corporation with its principal place of business in Los Angeles County, California. Among other activities, USC operates an intercollegiate sports program, the teams within which include a college football team commonly referred to as the USC Trojans.

3832892.3

3. Defendant Kiffin is an employee and authorized agent for the USC Trojans football program, and is assigned as its head football coach. At all relevant times, Kiffin was USC's agent with actual and apparent authority to staff, manage and operate the USC Trojans football program, including the selection of its coaches.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this tort cause of action and Defendants pursuant to Tenn. Code Ann. § 16-11-102 (a).

5. This Court has personal jurisdiction over Defendants because Defendants caused injury to Tennessee Football through their intentional and tortious acts and omissions which were committed in and caused injury in the State of Tennessee.

6. This Court has general personal jurisdiction over Kiffin because he has engaged in systematic and continuous activity within Tennessee, to wit: Kiffin resided in Tennessee from December 2008 to January 2010, and upon information and belief, continues to own real property located at 8701 Inlet Drive, Knoxville, Tennessee 37922; he previously worked as head football coach at the University of Tennessee, Knoxville from December 2008 to January 2010, and while in that role engaged in the recruitment of high school student athletes from various parts of the United States to attend the University of Tennessee; since leaving the University of Tennessee for the head coaching job at USC, Kiffin has contacted at least five football coaches who were residents of and employed in Tennessee – Monte Kiffin,

Ed Orgeron, Willie Mack Garza, James Cregg, and Kennedy Pola – to solicit their respective employment at USC; and has otherwise engaged in business and commerce within Tennessee, thereby purposefully availing himself of the general jurisdiction of the State of Tennessee.

7.  This Court has general personal jurisdiction over USC, and Kiffin as its agent, because they have engaged in systematic and continuous activities in Tennessee, upon information and belief, to wit: USC has previously been registered with the Secretary of State of Tennessee to do business within the state; USC and Kiffin have engaged in recruiting student athletes residing in Tennessee to enroll at USC and participate in its sports programs by offering scholarships and other incentives; USC and Kiffin have recently negotiated employment contracts with football coaches residing in Tennessee, including Monte Kiffin, Ed Orgeron, James Cregg, Willie Mack Garza, and Kennedy Pola; and upon information and belief, USC solicits contributions from its alumni located within the state of Tennessee, as a result of all of which USC and Kiffin as its agent have purposefully availed themselves of the general jurisdiction of the State of Tennessee.

8.  Venue is proper in this Court pursuant to Tenn. Code Ann. §§ 20-4-101(a) and 20-4-106 because Tennessee Football's causes of action arose and accrued in Davidson County, Tennessee.

<u>FACTS</u>

9.  Tennessee Football entered into an enforceable written contract of employment with Kennedy Pola. Under it, Pola agreed to become exclusively an

employee of Tennessee Football as its running backs position coach beginning February 1, 2010 and ending not before February 14, 2011 (the "Pola Contract"). A redacted copy of the Pola Contract is attached hereto as Exhibit A.

10.  Pola agreed in paragraph 4(a) of the Pola Contract that he would not "directly or indirectly, serve as an employee or do work for anyone else or any other firm or organization without the express prior written consent of the President and General Counsel [of Tennessee Football]."  Pola Contract, ¶ 4(a) (emphasis in original).

11.  Pola agreed in paragraph 11(c) of the Pola Contract that he would not "under any circumstance solicit discussions or entertain employment with any other person or entity during the Term unless...given written permission to do so by [Tennessee Football] or by the Commissioner in accordance with NFL Rules," and that "[v]erbal consent is inadequate." Pola Contract, ¶ 11(c).

12.  Pola was not given express written consent by Tennessee Football or the Commissioner of the NFL to entertain employment with any other entity.

13.  Tennessee Football performed all of its obligations under the Pola Contract.

14.  Kiffin and USC through him were aware of the Pola Contract.

15.  On Friday, July 22, 2010, while the Pola Contract was still in full force, Kiffin, individually and in his capacity as agent of USC, in furtherance of a culture of violation and avoidance of respect for the sanctity of contract, which Kiffin similarly practices, unbeknownst to Tennessee Football, contacted Pola in

Nashville, Tennessee and solicited his employment as the USC Trojans' offensive coordinator and running backs coach, and thus interfered with and induced the breach of the Pola Contract to the damage of Tennessee Football.

16. Kiffin and USC's actions involving Tennessee Football were intentional, without legal justification, and were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with existing contracts and induce the breach thereof, including the Pola Contract: For instance, in December 2008, Kiffin accepted the contractual position of head football coach at the University of Tennessee. Without warning, in January 2010, Kiffin abruptly departed after one season, leaving the University of Tennessee without an experienced head football coach, to accept the head coach position he currently holds at USC. Shortly thereafter, Kiffin and USC persuaded four more University of Tennessee coaches – Monte Kiffin, Ed Orgeron, James Cregg and Willie Mack Garza – to leave the University of Tennessee to assume employment in coaching positions with USC. Upon information and belief, USC and Kiffin also attempted to hire for USC a running backs coach, Eric Bienemy, who was under contract at the time with the National Football League team known as the Minnesota Vikings. USC and Kiffin were unsuccessful in persuading Bienemy to end his relationship with Minnesota, but upon information and belief, Minnesota was forced to renegotiate Bienemy's salary to its detriment due to Kiffin and USC's acts of interference.

17.    On or around Saturday, July 24, 2010, Pola was solicited and induced by Defendants to accept the position of offensive coordinator and running backs coach at USC, an action in breach of the Pola Contract.

18.    Pola's breach of contract, induced by Kiffin and USC, has damaged Tennessee Football, by, *inter alia*, depriving it of an experienced running backs coach less than one week prior to the beginning of Tennessee Football's training camp, disrupting its season planning and coordinated effort among its coaches, causing potential loss of confidence by its players, and causing extensive monetary losses consisting of salary and benefits paid to Pola since the commencement of the Pola Contract, and future damage.

## COUNT I – INDUCEMENT OF BREACH OF CONTRACT
## PURSUANT TO TENN. CODE ANN. § 47-50-109

19.    The Pola Contract is a legally enforceable contract between Kennedy Pola and Tennessee Football, and Tennessee Football has fully performed under the Pola Contract.

20.    Pola breached the Pola Contract by discussing employment opportunities with USC and Kiffin, accepting employment with USC offered through Kiffin, and leaving the Tennessee Football running backs coach position prior to the expiration of the Pola Contract.

21.    USC and Kiffin were aware of the Pola Contract.

22.    USC and Kiffin maliciously intended to – and did – induce Pola to breach the Pola Contract. USC and Kiffin engaged in improper means in their procurement of the breach and were not legally justified in their actions. Kiffin and

3832892.3                                    6

USC's actions, through him, were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with an existing contract and induce the breach thereof.

23.     USC and Kiffin's actions violate Tenn. Code Ann. § 47-50-109, which provides that

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

24.     As a proximate result of USC and Kiffin's tortious conduct, Tennessee Football has been damaged in an amount to be proven at trial.

## COUNT II – COMMON LAW TORTIOUS INTERFERENCE WITH CONTRACT

25.     The Pola Contract is a legally enforceable contract between Kennedy Pola and Tennessee Football, and Tennessee Football has fully performed under the Pola Contract.

26.     Pola breached the Pola Contract by discussing employment opportunities with USC and Kiffin, accepting employment with USC offered through Kiffin, and leaving the Tennessee Football running backs coach position prior to the expiration of the Pola Contract.

27. USC and Kiffin were aware of the Pola Contract.

28. USC and Kiffin maliciously intended to – and did – induce Pola to breach the Pola Contract. USC and Kiffin engaged in improper means in their procurement of the breach and were not legally justified in their actions. Kiffin and USC's actions, through him, were part of a course and pattern of conduct fostered by Kiffin and USC to use improper methods and means to the direct harm and damage of parties to contracts, to interfere with an existing contract and induce the breach thereof.

29. As a proximate result of USC and Kiffin's tortious conduct, Tennessee Football has been damaged in an amount to be proven at trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Tennessee Football, Inc. prays for:

(a) Judgment against USC and Kiffin in an amount to be proven at trial;

(b) The judgment to be for treble damages pursuant to Tenn. Code Ann. § 47-50-109;

(c) Punitive damages in an amount to be proven at trial;

(d) A jury to try all claims so triable;

(e) An award of attorneys' fees and costs to the extent allowable by law; and

(f) Such further and general relief as this Court deems appropriate.

ROBERT E. BOSTON (#9744)

MARK W. PETERS  (#18422)
MARY BETH THOMAS  (#23003)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone:   (615) 244-6380
Facsimile:    (615) 244-6804
bob.boston@wallerlaw.com
mark.peters@wallerlaw.com
marybeth.thomas@wallerlaw.com

*Attorneys for Tennessee Football, Inc.*

## EMPLOYMENT AGREEMENT

This is an Agreement between KENNEDY POLA and TENNESSEE FOOTBALL, INC., a Delaware corporation, which does business as Tennessee Titans.

### DEFINITIONS:

In this Agreement, the following capitalized terms will have the meaning shown below:

"Agreement" means this employment agreement and its appendices, all as amended or supplemented in a writing which You and Titans both sign.

"Applicable Law" means the internal laws of the State of Tennessee without resort or regard to choice of law rules, including, without limitation, statutory and common law of Tennessee; any applicable local or municipal ordinances, rules, regulations and codes; any applicable federal law or regulation of the United States of America; and where the context clearly indicates, the law of any other jurisdiction.

"Baptist Sports Park" means the Titans' Training Facility and related improvements located at or about 460 Great Circle Road in Nashville, Tennessee.

"Benefits" means the Benefits of Your employment which are in addition to salary, but which end if Your employment is Terminated, and includes such things as vacation and insurance. Your current Benefits are shown in Appendix "1."

"Board of Directors" means the Board of Directors of Titans.

"Cause" means grounds or reasons to Terminate this Agreement and can include any of the events mentioned in Numbered Paragraphs 6 and 8 of this Agreement.

"Chief Operating Officer" means the incumbent Chief Operating Officer of Titans and his designates or successors.

"Commissioner" means the incumbent Commissioner of the NFL or any successor, whether acting, interim or permanent.

"Executive Vice President" means an incumbent Executive Vice President of Titans and any successor.

"Facilities" means all of the physical plant comprising Baptist Sports Park and LP Field, including the fencing, fields, buildings, outbuildings, parking lots, superstructures, conveyances, seating areas, offices, lighting, private suites and lounges, storage areas, offices, concession areas, restrooms, meeting rooms and all other components, without limitation, of the premises at 460 Great Circle Road and One Titans Way in Nashville, Tennessee, and, for the purposes of this Agreement, their respective employees, agents, contractors and subcontractors.

"General Counsel" means the incumbent General Counsel of Titans and any successor.

"General Manager" means the incumbent General Manager of Titans or any other designated manager of the football operations of Titans and any successor.

"Gratuity" means a gift of money, property or any other thing that has a value of $100.00 or greater which is offered to You by any Titan employee, co-worker, player, Titan vendor, or person who does or desires to do business with Titans or an affiliate of Titans.

"Head Coach" means the incumbent Head Coach of Titans and any successor Head Coach, interim or permanent.

"Internet" means the world-wide network of computers commonly understood to provide some or all of the following features, among others: electronic mail, file transfers through File Transfer Protocol, Telnet access to local and remote computers, UseNet Newsgroups, Gopher access to information on local and remote computers, Wide Area Information Servers, and World Wide Web access.

"Job Duties" means the Work Titans has hired You to do and the services You are expected to provide to Titans, subject to the provisions in this Agreement for reassignment or any Special Provisions.

"Job Title" means the title inserted in the applicable spaces below and is Your job title.

## EXHIBIT A

"LP Field" means the assumed name of Cumberland Stadium, Inc. and the stadium and related facilities located on the east bank of the Cumberland River between Woodland Street and Shelby Street in Nashville, Tennessee, whose physical address is One Titans Way in Nashville, Tennessee, including any subsequent names of LP Field.

"Marks" means the trademarks, trade names, uniform design and trade dress of Titans, whether or not registered, including, without limitation, the name mark "Tennessee Titans," the monogram fireball, the stylized Titans' Sword, Music City Miracle, Titans' current and former uniform designs, helmet logos, and the names and trademarks of Houston Oilers, L.L.C., including, without limitation, the name mark "Houston Oilers," the derrick logo, former uniform designs, helmet logos and "Luv Ya Blue!"

"Media" means any communication medium of every present and future kind or character and regardless of how and when transmitted, received, stored or retrieved, including, without limitation, all forms of radio (including AM, FM and satellite radio transmissions and any future radio or radio delivery system), television (including analogue, digital, UHF, VHF, cable, satellite and any future television or television delivery or receiving system), print, computer, Internet, telephone, public address, photography and motion pictures of every type and description, and whether one or more of the foregoing, alone, in tandem or in combination.

"NFL" means the National Football League, an unincorporated association with its principal place of business in New York, or any successor football league of which Titans may be a member.

"NFL Rules" means, without limitation, the Constitution and By-Laws of the NFL; the rules, regulations and policies of the NFL; and pronouncements, rulings, arbitration decisions and directives of the Commissioner of the NFL, as the same exist now or as later modified, supplemented or amended.

"President" means the incumbent President of Titans or his designate or successor

"Property" means any data or information collected or stored in any form, whether visual or aural, presented on paper, stored electronically, digitally or in analogue form, whether video, still photo or otherwise, which is provided to You or which comes into Your possession by way of Titans or any of its employees, agents or contractors, including, without limitation, scouting, combine or player data; play books; game plans; game or practice films; or any other information or data You develop or prepare or which is developed or prepared under Your supervision during the Term, or is furnished or made available to You by Titans, and which Property is or can be stored or available on paper, computer hard drive or disc, CD Rom, digitally or in any other format, platform or means by which data or information can or may be stored or retrieved or viewed now or in the future. Property also means and includes any other Property furnished or provided to You by Titans during the Term of this Agreement, such as but not limited to office supplies, films, videos, video equipment, cellular telephones, mobile communication devices, equipment, card keys, keys and the vehicle, if any, issued to You.

"Salary" means the annual or other periodic salary or wages You will be paid during the years or period of the Term, written in the applicable spaces and paid to You as described herein, and is separate from Benefits.

"Special Provisions" means the other and additional terms, if any, written in the spaces under that heading in Appendix "3" to this Agreement

"Term" means the time period of Your employment under the provisions of this Agreement.

"Termination" or "Terminated" or "Terminate(s)" means and/or includes the Termination of this Agreement in accordance with its provisions prior to or at the conclusion of the Term.

"Titans" means Tennessee Football, Inc., a Delaware corporation doing business as Tennessee Titans, a member club of the NFL, and its successor franchise holder(s) and assigns.

"Titan Policies" means the written employment policies, rules and regulations of Titans which apply to You, including, without limitation, the policies You are given to read and/or sign at or near the time You sign this Agreement and all written amendments and additions made by Titans during the Term of this Agreement.

"Work" means the things You agree to do in this Agreement, the tasks You are assigned by Your supervisors, written materials You are to produce, instructions You give players or other employees, and the time You spend on behalf of Titans.

"You," "Your" and "Yours" means the person employed in this Agreement by Titans and whose name is shown in the Preamble hereof.

2

**AGREEMENTS:**

**TERM:** February 1, 2010, to and until the later of: (i) February 14, 2011, and (ii) the close of business on the first business day after seven (7) days following the date of the last playoff game in which Titans is a participating team immediately following the last regular-season game of the last regular season covered by this Agreement.

**SALARY:** $ (2/1/10 to and until the later date described in the "Term" above) **REDACTED**

**JOB TITLE:** Assistant Coach-Running Backs (subject to reassignment in accordance with the terms hereof)

**JOB DUTIES:** (1) Scouting, recruiting, training, coaching, counseling, conditioning and otherwise developing player personnel in collaboration with the Head Coach and Offensive Coordinator.

    (2) Designing and conducting portions of player practices and running player meetings related to players You supervise; and developing, installing and implementing the offensive game plan in collaboration with the Head Coach and Offensive Coordinator.

    (3) Evaluating, testing and grading players (both present and prospective team members) for purposes of determining player retention, advancement and recruitment, as well as on-field assignments and playing time.

    (4) Developing players and improving on-field performance through the application of corrective and disciplinary action; and enforcing rules of conduct/decorum and other team policies applicable to player personnel, on and off the playing field, in collaboration with the Head Coach and General Management.

    (5) Otherwise supervising and directing Titans' running backs.

    (6) Such other usual services and duties customarily performed by an Assistant Coach as may be required of You from time to time by Titans.

    (7) Such Media appearances as Titans may require of You.

    (8) You will abide by and enforce all NFL Rules as they are presently established or as revised in the future, including without limitation, Personal Conduct Policy, Alcohol Policy, Policy and Program for Substance Abuse, and Policy on Anabolic Steroids and Related Substances, these being mentioned by way of example only.

## 1. EMPLOYMENT AND SALARY

 (a) During the Term, You agree to perform the Job Duties and Work faithfully, timely and to the best of Your ability, and to honor and perform all of Your other obligations and agreements contained in this Agreement. Titans agrees that it will pay You the Salary in the manner hereafter provided.

 (b) Your faithful performance of the Job Duties includes all of Your working time, energy and talents exclusively for Titans under the direction of the President, as implemented by the President and/or Head Coach.

 (c) Your annual Salary will typically be paid in equal semi-monthly installments on the 1st and 15th days of each month during the Term but in any event will equal during the Term the amount of annual Salary shown herein. Deductions from Salary will be made: (i) pursuant to Applicable Law; (ii) for any unreimbursed advances made by Titans to You or for Your account and which are not repaid after 30 days; (iii) as You have agreed separately with Titans; and (iv) for any Benefits You are allowed or request under Titan Policies and for which payment is Your responsibility under Titan Policies.

 (d) You agree that You will faithfully follow the Work Instructions You are given by Titans, its President, Head Coach or any other supervisory personnel under whom You work.

 (e) You agree that You will act in good faith toward Titans and will be truthful with Titans' management and that You will not misrepresent anything to Titans or to anyone who supervises You.

3

2. **PROMOTION OF TITANS**

In addition to your Job Duties, You expressly agree that You will fully cooperate with and assist Titans in all reasonable promotional activities. You consent to and authorize Titans to use Your name, portrait, picture, image, likeness and voice, and Your game, practice and scrimmage performance in all Media, whether for trade, promotional, advertising or other reasonable purposes of Titans

3. **CONFIDENTIALITY**

   (a) You acknowledge and agree that the Work You perform in furtherance of Your Job Duties, this Agreement, the terms of Your employment, and Your discussions with supervisory personnel of Titans are confidential and You promise and agree not to disclose anything about Your Work to any third party during the Term or thereafter.

   (b) You agree that You will not make any public criticism or cause to be made any public criticism of Titans or any employee of Titans to Media or any third party during the Term or thereafter.

   (c) Separately, and not in limitation of any of Your other agreements regarding confidentiality, You will not discuss with any player, player agent or representative, Media, or any other person anything regarding the terms, length, compensation, salary, business or any other feature of any player contract. Any such discussion shall take place only with Titans' player contract negotiators and no one else. **YOU WILL NOT UNDER ANY CIRCUMSTANCE MAKE PUBLIC OR PRIVATE COMMENTARY (INCLUDING "OFF-THE-RECORD" STATEMENTS) TO ANYONE ABOUT THE STATUS OF TITANS' NEGOTIATIONS WITH ANY PLAYER OR OFFER ANY STATEMENT REGARDING THE ADVISABILITY OR DESIRABILITY OF SIGNING OR NOT SIGNING ANY PLAYER.**

   (d) The terms of this Agreement and any amendment are confidential, and You agree not to disclose the terms of Your employment, Salary or Benefits or the provisions of this Agreement to any third party other than Your retained professional advisors (such as Your lawyer, accountant and tax professional) who have agreed to keep the terms, conditions and provisions of this Agreement confidential. This Agreement will be fully disclosed to and approved by the Commissioner.

4. **OTHER EMPLOYMENT**

   (a) You agree that during the Term, You will not, either directly or indirectly, serve as an employee or do work for anyone else or any other firm or organization without the express prior written consent of the President <u>and</u> General Counsel  You also agree to comply with NFL Rules regarding ownership of any interest in any football organization.

   (b) You agree that during the Term, Titans has the exclusive right to direct, control and prohibit Your appearance on or in Media, whether commercial, informational or otherwise, and whether or not for a fee  All public or Media appearances by You, without exception, are to be made only with Titans' express written permission or at Titans' instructions. You agree not to make or enter into any written or oral agreement for public or Media appearances of any sort unless approved in writing in advance by Titans. Among other things, this means You may not appear on any television or radio program unless and until specifically approved by Titans.

   (c) You will ordinarily be granted written permission to attend and participate in and to retain income from coaching instructional clinics and seminars and other promotional appearances, provided that:

       (1) You request and obtain written permission from the President and General Counsel prior to making any such agreement; and
       (2) The agreement You want to make does not, in Titans' sole opinion, materially interfere with Your Work or Job Duties; and
       (3) No Media appearance is involved; and
       (4) The agreement or appearance does not violate this Agreement or NFL Rules or Applicable Law; and
       (5) Neither You nor Your third-party employer use or imply the sponsorship, endorsement, approval or involvement of Titans in any other work You are permitted to do.

   (d) You acknowledge that Titans, through NFL Properties, Inc., is participating in one or more game-day commercial licensing programs. Therefore, You agree that You will not accept any consideration from third parties for and will not wear, display or promote any apparel or other product bearing commercial names or logos of manufacturers throughout the game-day period while You are in view of the stadium and television audience, including any pre-game warmups, in the bench area, and during post-game interviews in the locker room or on the field. However, You understand that pursuant to such NFL Properties licensing programs, You

4

are expected to wear merchandise on game day on the sidelines as provided by official NFL suppliers and as directed by NFL Properties, and You agree to do so

5. **TERMINATION AND TERMINATION FOR CAUSE**

(a) If, during the Term, You become incapacitated or disabled to the extent You are unable to perform Your Work or Job Duties, Titans may, at its sole option, Terminate this Agreement for Cause by providing You with 30 days' notice at the last address You have given Titans. Unless You are able to resume Your Work and Job Duties prior to the date of Termination provided in such notice, this Agreement shall then Terminate. Certain Benefits related to disability may be, but are not necessarily, applicable in the event of Termination for such disability In the event Titans elects not to provide notice of Termination as a result of a disabling injury or illness, Titans may substitute its then-applicable salary continuation plan benefit, if any, in lieu of Your Salary during the period of any such disability. Nothing, however, shall prevent Titans from exercising at any time its right to provide notice of Termination for Cause in the event of a disability, regardless of salary continuation.

(b) In the event of Your death during the Term, this Agreement shall automatically Terminate for Cause and Titans shall pay Your survivor Your accrued Salary through the date of Your death, less any sums received by You or Your beneficiaries under the workers compensation provisions of Applicable Law.

(c) You expressly agree that during the Term, You will conduct Yourself at all times with due regard for and adhere strictly to NFL Rules, Applicable Law and Titan Policies. Moreover, You agree that during the Term, You will at all times conduct Yourself: (i) with due regard for public convention and morals; (ii) in a manner that reflects positively upon Titans and the NFL; and (iii) in accordance with NFL Rules. You acknowledge that public acceptance of Titans, the NFL and Titans' management depends largely in part on perception of Titans' employees and their conduct at all times Additionally, You acknowledge that Your conformity to Applicable Law, NFL Rules, Titan Policies and this Agreement and Your adherence to the terms, conditions and provisions of this Agreement are of great importance to Titans and the NFL. Accordingly, You agree that Titans may, at its sole option, Terminate this Agreement for Cause in the event You:

    (1) Commit a high-level misdemeanor or any felony under Applicable Law of any jurisdiction.
    (2) Violate material NFL Rules (including, without limitation, those set out in Numbered Paragraph 6 below) or Titan Policies.
    (3) Use, sell or distribute any illegal or controlled substance.
    (4) Engage in unabated insubordination.
    (5) Violate any provision of this Agreement, including, without limitation, refusal to perform Job Duties or Work.
    (6) Engage in any other act or conduct which, in the reasonable opinion of Titans, constitutes a material violation of Your covenants to Titans with regard to Your conduct during the Term.
    (7) Use any Property for any purpose other than to benefit Titans.
    (8) Voluntarily retire; nevertheless, You agree that in the event You voluntarily retire during the Term, You will not return to work in any capacity in the NFL or in professional or amateur athletics during the remainder of the Term, except with Titans' express prior written consent. Moreover, this Agreement and Titans' obligation to pay Salary shall be tolled during the period of any such voluntary retirement, even in the event Titans hires a replacement for Your position. All Benefits, however, end as of the date of Your voluntary retirement. Titans retains all of its common law rights and remedies in any event.

(d) Titans may Terminate this Agreement for any Cause by giving You five (5) days' written notice at the last address You have provided Titans. When such notice is given, this Agreement is Terminated and is of no further force or effect, but Titans shall pay Your accrued Salary as of the date of Termination. All Benefits will end as of the date of Termination (without regard to Cause or lack thereof), except as provided or required by Applicable Law for COBRA benefits or other statutory benefits, the possibility of disability benefits (if applicable), or benefits continued by NFL Rules.

(e) In the event this Agreement is Terminated by Titans for a reason other than Cause, Titans shall continue to pay Your Salary for the remainder of the Term, subject to Your affirmative obligation to mitigate. All Benefits shall end as of the date of Termination (without regard to Cause or lack thereof), subject to Applicable Law relating to Benefits and the then-effective provisions of Titan Policies.

(f) In the event this Agreement is not Terminated for Cause and Titans is obligated to continue payment of Your Salary, You have the continuing affirmative duty during the Term to seek other employment diligently. At all times during payment of such Salary by Titans to You, Titans shall have the continuing right to obtain and verify data from You regarding your efforts to mitigate and your remuneration from any employment or work, including, without limitation, taking Your statement under oath. After Termination, but during the Term, all amounts

5

earned or which reasonably could have been earned by You during the Term shall be offset against Titans' Salary obligation to You.

6  **NFL RULES**

(a) You agree at all times to comply with and to be bound by all of the provisions of the Constitution and By-Laws and Rules and Regulations of the NFL and of any other league of which Titans may hereafter become a member, all of which are hereby made a part of this Agreement, and by the decisions of the Commissioner of the NFL, which shall be final, conclusive and unappealable. You and Titans agree that all matters in dispute between You and Titans shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive, binding and unappealable by You and Titans. You, if involved or affected in any manner whatsoever by a decision of the Commissioner, whether the decision results from a dispute between You and Titans or otherwise, hereby release and discharge the Commissioner, the NFL or any league of which Titans may hereafter become a member, each director, officer, stockholder, owner or partner of any club in the NFL, or in any league of which Titans may hereafter become a member, each employee, agent, official or representative of the NFL or of any club in the NFL, or of any league of which Titans may hereafter become a member, jointly or severally, individually and in their official capacities, of and from any and all claims, demands, damages, suits, actions and causes of action whatsoever, in law or in equity, arising out of or in connection with any such decision of the Commissioner

(b) You understand that the Constitution and By-Laws of the NFL, among other things, expressly provide that You have an obligation to communicate openly and candidly with the principal owner and/or his designated representatives; to ensure that Titans' ownership is informed on a complete and timely basis of all matters affecting Titans' operations; to respect the authority and responsibility of ownership to make decisions on behalf of Titans; and to avoid actions that undermine or damage Titans' reputation or operating success.

(c) You hereby acknowledge that You have read the Constitution and By-Laws and Rules and Regulations of the NFL and of Titans, and that You understand their meaning.

(d) You expressly agree that Titans reserves the right to discipline You for violation of NFL Rules or Titan Policies, which discipline may include any or all of the following:

(1) Termination for Cause.
(2) Suspension without pay.
(3) Suspension with pay.
(4) Forfeiture of game tickets and/or credentials and/or parking passes.
(5) Your good-faith participation in NFL or Titan educational, learning, rehabilitation or other corrective programs or treatment at Your personal expense (to the extent coverage is not available under benefits provided under Titan Policies).
(6) Your good-faith participation in such activities as community or school service, relief efforts, local charitable endeavors or other reasonable community services.
(7) Your good-faith compliance with any court order, probation order or lawful directive to pay fees, fines, court costs or other court-related fees.
(8) Any other form of discipline or corrective action which Titans, acting reasonably and in good faith, may deem appropriate under the circumstances.

Discipline imposed by Titans is separate from and in addition to any punishment or discipline which may be imposed by the Commissioner or by any governmental authority. Titans will make reasonable efforts to maintain the confidentiality of any discipline imposed pursuant to this Agreement.

7  **REASSIGNMENT**

You agree that Titans has the right during the Term to reassign You to other or additional job classifications within Titans' organization, but not to reduce Your Salary as a result of any such reassignment. If You are reassigned to other or additional Work or Job Duties, You agree to perform such different Work or Job Duties to the best of Your ability.

8.  **TITAN PROPERTY**

(a) You agree that all Property belongs exclusively to Titans and that You will return all Property to Titans in a timely fashion and at the request of Titans and at the Termination of this Agreement. You also agree to return all Property in the condition in which it was delivered to You or produced by You (reasonable wear and tear

6

excepted) and You expressly agree not to damage or harm Property intentionally or to misuse it or to transport or store it carelessly.

(b) You acknowledge that Property is developed or obtained by Titans at significant expense and that a part of Your Work and Job Duties is to protect it and insure that it is not mishandled, lost or damaged. Property You develop during the Term is to be used exclusively by and for the sole benefit of Titans. Property that is scouting or combine data or information is to be used only for Titans' sole and exclusive benefit and You promise that You will never provide any Property to any third party for any reason and that You will never participate in any effort to duplicate, reproduce or transmit any Property to or for the benefit of any third party.

(c) You expressly acknowledge that Your failure to comply with this Agreement with respect to Property can result in Termination of Your employment for Cause, and that additionally, You may be libel for civil damages resulting from Your misuse of Property or Your violation of provisions of this Agreement relating to Property. Moreover, Your use of Property to benefit Yourself personally or financially or to benefit any third party in any way may also result in NFL fines or discipline and/or criminal prosecution.

9   **TITAN MARKS, FACILITIES AND CREDENTIALS**

(a) You acknowledge and understand that as an employee of Titans, You acquire no rights of any kind to use or make use of Titans' name or Marks and You agree that You will not make any use of the name or Marks unless such use is for the exclusive benefit of Titans. You expressly agree that You will make no use of the name or Marks for any personal endeavor or enterprise at any time and You promise that You will not allow or permit others to use or make use of Titans' name or Marks except in connection with agreements made for the exclusive benefit of Titans and/or the NFL.

(b) You acknowledge and understand that as an employee of Titans, You acquire no right of any kind to use or make use of the Facilities or any part thereof except for the sole and exclusive use and benefit of Titans. You expressly agree that You will make no use of the Facilities for any personal endeavor or enterprise at any time and You promise that You will not allow or permit others to use or make use of the Facilities for any purpose other than Titans' business

(c) You acknowledge and understand that admission credentials, official passes or any other means of entry into the Facilities or any portion thereof are the sole and exclusive property of Titans and/or the NFL. You are never authorized to sell, trade, offer or give away any admission credential, official pass or any other means of entry into the Facilities or any portion thereof except for the business or promotion of Titans. You agree that You will never sell, trade or give away any admission credential, official pass or any other means of entry into the Facilities or any portion thereof except for the business or promotion of Titans in accordance with Titan Policies.

(d) Your personal use of the Marks, Facilities, credentials, official passes or any other means of entry into the Facilities is a violation of Your covenants and agreements with Titans and a breach of this Agreement and renders You subject to Termination for Cause by Titans, suspension without pay, and/or discipline by the Commissioner.

(e) Under current Titan Policies, You will be provided complimentary admission tickets to Titan home games for the use of Your family, friends or guests. You may also be permitted to purchase additional admission tickets, if available. You expressly agree, however, that You will not use any Titan tickets for resale at a price in excess of the posted price whether for Your own account or for the use of a third party or ticket broker. Moreover, You expressly agree that You will not trade or barter any Titan ticket for vehicles, merchandise or services with any third party under any circumstances. Should You violate this provision of this Agreement, Titans may impose appropriate discipline  Resale of Your tickets for a price in excess of the face value thereof is also a violation of NFL Rules and subject to separate discipline by the Commissioner.

10  **ETHICAL CONSIDERATIONS**

(a) You must disclose to Your immediate supervisor and an Executive Vice President in writing or by e-mail any Gratuity offered to You by any Titan employee, co-worker, player or third party prior to acceptance. Individual meals; recognition such as plaques, trophies or similar items; gifts or tokens of inexpensive clothing, travel bags or modest customary holiday gifts; pen and pencil sets; and other typical gifts of little or small value less than $100.00 are not included in the scope of this Agreement.  Once disclosed, You may accept the gift IF AND ONLY IF approved in writing in advance by both Your supervisor and an Executive Vice President.  Approval will ordinarily be granted in the absence of any actual or potential conflict of interest.

7

(b) You may not solicit, accept or agree to accept from any third party any Gratuity or an offer of employment in connection with or in return for any decision approval, disapproval, recommendation, purchase or purchase order, or influencing or attempting to influence the outcome of a decision made in connection with or related to the business of Titans or an affiliate of Titans.

(c) You may not perform work or provide services to or for the benefit of another Titan employee, co-worker, player or third party as part of an agreement for hire, for barter, for money, or for any other thing of value without the express prior written consent of Titans, acting through its COO or his delegate. You may not perform work for other Titan employees, co-workers, players, or any third party during Work hours or otherwise and may not make use of Titan equipment for such purposes. Any approved third-party work arrangement must be disclosed to Your supervisor and an Executive Vice President and noted in Your personnel file. Routine errands, travel arrangements, and other ordinary personal tasks commonly performed for a supervisor are acceptable, but not as part of a regular or separate agreed-upon arrangement for compensation.

11. **MISCELLANEOUS**

(a) This Agreement and any other signed agreements which are attached represent the entire Agreement. There are no oral understandings. Neither You nor Titans will rely on any other representations, agreements or discussions, including prior negotiations. If not written in this Agreement or its attachments or Titan Policies, it is not part of this Agreement.

(b) Paragraph headings are for convenience and organization and do not alter or affect any of the language of the Agreement.

(c) You agree that You will not under any circumstance solicit discussions or entertain employment with any other person or entity during the Term unless You are given written permission to do so by Titans or by the Commissioner in accordance with NFL Rules. Verbal consent is inadequate.

(d) This Agreement shall be governed by and interpreted pursuant to Applicable Law of Tennessee without resort or regard to choice of law rules.

(e) This Agreement may be executed in multiple counterparts, each of which will be considered an original.

(f) If Titans wants or needs to provide You notice, it may do so by sending it properly addressed by Certified Mail, return receipt requested, or courier delivery to You at:

KENNEDY POLA
c/o Tennessee Football, Inc.
460 Great Circle Road
Nashville, TN 37228

and such notice shall be deemed provided as of the date deposited with the courier service or United States Postal Service and properly addressed and postage or delivery charges paid.

If You want or need to provide notice to Titans, You may do so by sending it properly addressed by Certified Mail, return receipt requested, or courier delivery to Titans at:

Tennessee Football, Inc.
460 Great Circle Road
Nashville, TN 37228
Attn: Steve Underwood

and such notice shall be deemed provided as of the date deposited with the courier service or United States Postal Service and properly addressed and postage or delivery charges paid.

You or Titans may provide notice to the other of a different future address or addresses, so long as such notice is given in the manner described in this Agreement.

(g) This Agreement will be binding upon and inure to the benefit of Titans' successor franchise holders, successors and assigns. Assignment by You of Your Job Duties is prohibited unless separately agreed in writing.

(h) This Agreement supersedes all prior agreements between You and Titans, except to the extent such prior agreements have continuing obligations (such as confidentiality and choice of law) on Your part.

8

12. **COMMISSIONER APPROVAL**

This Agreement is not effective or binding upon Titans until approved by the Commissioner.

EXECUTED on the date shown below, but effective as of the commencement date of the Term.

TENNESSEE FOOTBALL, INC.

By _____
Steve Underwood, Senior Executive Vice President,
Chief Operating Officer & General Counsel
Date: _____02/11/10_____

KENNEDY POLA
Date: _____2/10/10_____

APPROVED:

_____
Commissioner, National Football League
Date: _____6/16/10_____

U:\WORK\Titans\Football\Coaches\Contracts\pola 2010_agt.wpd

9

APPENDIX "1"

BENEFITS

# REDACTED

APPENDIX "2"

## TITAN POLICIES AND NFL RULES

List of Titan Policies and NFL Rules provided to You during prior employment and/or at the time You sign this Agreement (as each of the following are presently established or as revised in the future):

| | | |
|---|---|---|
| _____ | 1 | EEO Policy |
| _____ | 2. | Automobile Policy |
| _____ | 3. | Insurance Plan Booklet |
| _____ | 4. | Employee Policy Manual |
| _____ | 5. | Drug-Free Workplace Policy |
| _____ | 6. | Selected Portions of NFL Constitution and By-Laws |
| _____ | 7. | Tampering Policy |
| _____ | 8. | Salary Continuation/Disability Insurance Plan |
| _____ | 9. | Personal Conduct Policy |
| _____ | 10. | Alcohol Policy |
| _____ | 11. | Policy and Program for Substance Abuse |
| _____ | 12. | Policy on Anabolic Steroids and Related Substances |

_Kennedy Pola_

KENNEDY POLA

APPENDIX "3"

SPECIAL PROVISIONS

1. The Salary shown for the period February 1, 2010, to February 14, 2011, will be reduced by gross salary payments You have already received, if any, from Titans during the period from February 1, 2010, until the date this Agreement is signed by You.

2. Titans currently has a preferred bank and requests that You consider Pinnacle Bank for your banking needs, including mortgage or other lending. Should Pinnacle Bank not be the preferred bank of Titans in the future, Titans requests that You similarly consider any successor preferred bank.

3. You understand and acknowledge that during the Term, Titans currently offers to You a free taxi and/or car service for transportation 365 days a year, 24 hours a day, in the events You have been drinking and need transportation to Your home or elsewhere. Your arrest for driving while intoxicated or driving under the influence of drugs or alcohol is a violation of NFL Rules and Titan Policies and can be Cause for Termination and/or discipline under this Agreement.

KENNEDY POLA